351 S.E.2d 422

**STATE of West Virginia**

v.

**Kenneth HOLMES.**

**No. 16080.**

Supreme Court of Appeals of West Virginia.

Dec. 9, 1986.

Larry E. Losch, Pros. Atty., and Kenneth J. Barnett, Asst. Pros. Atty., Nicholas County, Summersville, for appellant.

Donald K. Bischoff, Summersville, James H. Wolverton, Richwood, for appellee.

PER CURIAM:

The defendant in this case, Kenneth Holmes, is appealing from a judgment of the Circuit Court of Nicholas County sentencing him to from ten to twenty-five years in the state penitentiary for sexual assault in the first degree. He claims that the circuit court erred in improperly directing, and intervening in, the trial process after a defense witness recanted before the jury. He also contends that the trial court erred in refusing to direct a verdict of acquittal for him for the offense of first degree sexual assault since the State did not prove, beyond all reasonable doubt, that the alleged victim was not his voluntary social companion and since the State did not establish "forceable compulsion". After examining the record, we conclude that the trial court did not commit reversible error. Accordingly, we affirm the defendant's conviction.

On June 7, 1982, Carol Tenney, who several days previously had become acquainted with the defendant while walking her dog, met the defendant at the Fenwick School in Nicholas County. They discussed the defendant's dog, and the defendant invited her to join him in searching for some baby rabbits which he had recently seen in the vicinity. She agreed, and while she and the defendant were in the process of looking for the rabbits, the defendant, according to her testimony, grabbed her around the neck, put his hand over her mouth and dragged her up a hill, where he raped her.

Ms. Tenney testified that as she was being dragged up the hill the defendant told her not to cry out or scream or he would hurt her. She also testified that she

was scared, and that, as a consequence, she followed the defendant's instructions and, after he told her to lie down, she "just laid there and did nothing". At no point did she scream for help or strike, kick or bite the defendant.

After the alleged offense Ms. Tenney and the defendant walked toward the Fenwick Grade School, where people were present on the playground. She did not indicate to them that she had been raped, sexually assaulted, or otherwise disturbed.

There were no witnesses to the alleged crime other than Ms. Tenney and the defendant. There was no evidence that the defendant employed a deadly weapon in the commission of the alleged crime, and there was no evidence that the defendant had inflicted serious bodily injury upon Ms. Tenney. A physician who testified in the case stated that he examined Ms. Tenney on June 7, 1982, subsequent to the alleged assault. His examination disclosed no marks of violence and no scratches, bruises, cuts or red marks.

The defendant, testifying in his own behalf, admitted that he and Carol Tenney had engaged in sexual intercourse on June 7, 1982. He, however, stated that the activity was consensual and that he had previously engaged in consensual intercourse with her on June 2 and June 5, 1982. He testified that the June 5, 1982, incident had occurred in the doorway of the Fenwick Grade School. He denied that he had made threats, committed acts of violence or used force during or after the June 7, 1982, incident.

To corroborate his testimony that he had engaged in sexual intercourse with Ms. Tenney before June 7, 1982, the defendant called as a witness Shelby Adkins, who initially testified that he had observed the defendant and Carol Tenney engaging in sexual intercourse beside a door of the Fenwick Grade School on June 5, 1982. Upon cross-examination, Mr. Adkins reversed his testimony and indicated that he had not actually seen anything on June 5, 1982. His actual testimony was:

Q. Now, you have told Lisa Gulley that Sherry Holmes [the defendant's wife] wanted you to come up here and say you saw them there, but you didn't see anything, you don't know why they had you summoned because you didn't see anything, didn't you?

A. Uh huh.

Q. You also told that to Bill Ward?

A. Uh huh.

After eliciting this testimony from Mr. Adkins, the prosecutor indicated that he did not wish to cross-examine the witness further. Defense counsel also indicated that he had concluded his examination of witness Adkins. The trial judge thereupon informed Mr. Adkins that he was to step aside, but not to leave, since "the Court wants to talk to you after the case is over".

After the defendant had rested his case, the State called William B. Ward as a rebuttal witness. Mr. Ward was asked about a conversation with witness Adkins. The defendant objected. At that point, still in the presence of the jury, the trial court instructed the court reporter to read the prior testimony of witness Adkins about his not really seeing the defendant at the Fenwick School on June 5, 1982. The court then directed that proceedings be conducted in chambers out of the hearing of the jury.

In chambers the court asked witness Adkins what the truth was regarding what he had seen at the Fenwick School on June 5, 1982. Witness Adkins informed the court that he had not actually observed the defendant engaging in sexual intercourse on that date. He said that he had lied while testifying for the defendant because he was attempting to "just get them [referring to the defendant's family] off my back". In elaborating, he indicated that the defendant's wife had hounded him to testify in her husband's behalf. The court then, *sua sponte*, advised the prosecuting attorney to call Adkins as a witness so that he might tell the jury the truth.

In response to the court's advice, the prosecuting attorney recalled witness Adkins, who, in front of the jury, clearly recanted his testimony. When asked why he had previously testified that he had seen the defendant and Ms. Tenney together on

June 5, he responded: "I was aggravated. People aggravating me left and right and Sherry [the defendant's wife] was aggravating me." Later he said, "I had to say something to get them off my back." The defendant moved for a mistrial, but the court denied the motion.

In the present proceeding the defendant first contends that the trial court erred in denying his motion for mistrial when the trial court intervened after witness Adkins recanted. Under this assignment of error the defendant makes three arguments: (1) that witness Ward's testimony constituted extrinsic evidence of a prior inconsistent statement by witness Adkins that tended to impeach witness Adkins and that such extrinsic evidence was inadmissible after witness Adkins recanted his testimony; (2) that the trial court prejudiced his case by saying to witness Adkins, before the jury, "the court wants to talk to you" after Adkins had indicated that he had perjured himself and had recanted; and (3) that the trial court erred by suggesting to the prosecutor, in chambers, that he recall witness Adkins and inquire further into the perjury.

 This Court recently recognized in syllabus point 4 of *State v. Burton,* 163 W.Va. 40, 254 S.E.2d 129 (1979), that:

A trial judge in a criminal case has a right to control the orderly process of a trial and may intervene into the trial process for such purpose, so long as such intervention does not operate to prejudice the defendant's case. With regard to evidence bearing on any material issue, including the credibility of witnesses, the trial judge should not intimate any opinion, as these matters are within the exclusive province of the jury.

In *Burton* the Court also recognized that a claim of improper trial court intervention must, on occasion, be viewed more broadly than from the narrow perspective of the incident itself. *See State v. Starkey,* 161 W.Va. 517, 244 S.E.2d 219 (1978); *State v. Cokeley,* 159 W.Va. 664, 226 S.E.2d 40 (1976).

Under the West Virginia Rules of Evidence, a trial judge is charged with promoting the ascertainment of the truth during the examination of witnesses. Rule 611(a) of the Rules of Evidence alludes to this charge when it provides:

The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment....

In the case presently before the Court, witness Shelby Adkins suggested during his initial cross-examination that his prior testimony was incorrect and that he had given perjured testimony. His remarks were rather ambiguous. He replied "Uh huh" when asked by the prosecution whether he had made a prior inconsistent statement about seeing the defendant engaging in intercourse with Ms. Tenney on June 5, 1982.

 It has been recognized that proof of former inconsistent statements is admissible where a witness neither admits nor denies making them or where his response is ambiguous. *See State v. Miles,* 73 Wash.2d 67, 436 P.2d 198 (1968); *People v. Perri,* 381 Ill. 244, 44 N.E.2d 857 (1942); 98 C.J.S. *Witnesses* § 610 (1957), 81 Am. Jur.2d *Witnesses* § 608 (1976), E. Cleary, *McCormick's Handbook on the Law of Evidence,* § 37 (2d ed. 1972).

 These authorities suggest that from a purely evidentiary point of view, given the rather unclear nature of witness Adkins' recantation, the trial court did not err in receiving the testimony of the prosecution's rebuttal witness, William B. Ward.

Where extrinsic evidence is introduced, Rule 613(b) of the Rules of Evidence requires that the impeached witness be afforded an opportunity to explain the inconsistency:

*Extrinsic Evidence of Prior Inconsistent Statement of Witness.*—Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportuni-

ty to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2).

■ This Rule indicates that after witness Ward testified that witness Adkins had given a prior inconsistent statement it was incumbent upon the trial court to insure that witness Adkins again took the witness stand so that he could be interrogated further and so that he could be afforded an opportunity to explain the inconsistency. Also, the requirement that the trial court control the trial process to promote the development of the truth dictated that witness Adkins be given an opportunity to clarify his testimony and state to the jury precisely what the truth was. Under the circumstances, the court's suggestion that the State recall witness Adkins for further examination did not constitute reversible error. The trial judge's remark in the presence of the jury, that he wanted to speak with witness Adkins out of the presence of the jury did not constitute an intimation of opinion on the part of the trial judge as to the credibility of the witness. This Court does not believe it impermissibly prejudiced the defendant's case.

Overall, the Court believes that the trial court's actions fell within the trial judge's right to control the orderly process of the trial as recognized by syllabus point 4 of *State v. Burton, supra,* and did not constitute reversible error.

The defendant also claims that the trial court erred in refusing to direct a verdict of acquittal for the offense of first degree sexual assault for the reason that the State did not prove beyond all reasonable doubt that the alleged victim was not a voluntary social companion on the occasion of the crime. Additionally, he argues that the trial court erred in refusing to direct a verdict of acquittal for the reason that the State did not prove forceable compulsion beyond a reasonable doubt.

■ This Court has repeatedly held that, upon a motion for a directed verdict, the evidence in a criminal case must be viewed in the light most favorable to the prosecution. The exact rule, as recently reiterated in syllabus point 1 of *State v. Gum,* 172 W.Va. 534, 309 S.E.2d 32 (1983), provides:

" 'Upon motion to direct a verdict for the defendant, the evidence is to be viewed in light most favorable to prosecution. It is not necessary in appraising its sufficiency that the trial court or reviewing court be convinced beyond a reasonable doubt of the guilt of the defendant; the question is whether there is substantial evidence upon which a jury might justifiably find the defendant guilty beyond a reasonable doubt. Syllabus Point 4, *State v. Johnson,* [159] W.Va. [682], 226 S.E.2d 442 (1976).' Syllabus Point 5, *State v. Woods,* [169] W.Va. [767], 289 S.E.2d 500 (1982)." Syl. pt. 4, *State v. Oldaker,* 172 W.Va. 258, 304 S.E.2d 843 (1983).

Recently in the sexual-assault case of *State v. Miller,* 175 W.Va. 616, 336 S.E.2d 910 (1985), the Court examined a fact situation to determine whether the evidence indicated that the alleged victim might have been a voluntary social companion of the accused. In that case, the victim was induced to enter the accused's car under the guise of helping the accused locate his dog. The Court concluded that the fact that the victim voluntarily entered the car did not establish the fact that she was a voluntary social companion. Furthermore, the Court concluded that once the ruse of looking for the dog ended, the victim's status could not be termed voluntary since there was evidence that at that time she was forced to lie down in the front seat of the car while the accused drove to a remote location where the alleged sexual assault was committed.

■ In the case presently under consideration, Ms. Tenney testified that initially she began walking with the defendant in search of baby rabbits. She also testified that while she was looking for the rabbits the defendant grabbed her around her neck and put his hand over her mouth and dragged her up a hill, where he raped her. The Court believes that this factual situation is similar to that presented in *State v.*

*Miller, supra,* in that under it the jury could have concluded, and apparently did, that the defendant and Ms. Tenney were not voluntary social companions at the time sexual intercourse occurred.

Likewise, Ms. Tenney's evidence indicated that the defendant did use forceable compulsion in persuading her to submit. As already stated, she testified that the defendant grabbed her around the neck, put his hand over her mouth, and dragged her up the hill, where the sexual intercourse occurred. She further testified that she was scared after this occurred, and that because she was frightened, she submitted. In the *Miller* case the Court indicated that the fact that the victim did not make an outcry did not vitiate the jury's verdict. The Court concluded that the remote area where the assault occurred suggested the futility, if not the danger, of the victim making an outcry.

Overall, the evidence in this case, when viewed in the light most favorable to the prosecution, as required by syllabus point 1 of *State v. Gum, supra,* was sufficient to preclude the trial court from directing a verdict, and the trial court did not err in refusing to grant the defendant's motions for a directed verdict.

For the reasons set forth above, the judgment of the Circuit Court of Nicholas County is affirmed.

Affirmed.