384 S.E.2d 130

**STATE of West Virginia**

v.

**David Lee PLUMLEY.**

No. 18518.

Supreme Court of Appeals of
West Virginia.

July 12, 1989.

Attorney General Office, Brenda Craig Ellis, Charleston, for the State.

R. Lee Booten, II, Huntington, for Plumley.

NEELY, Justice:

David Lee Plumley was convicted of grand larceny, burglary, felony-murder, aggravated robbery and first degree arson by the Circuit Court of Cabell County. Mr. Plumley now appeals his conviction alleging several assignments of error including allowing the jury to consider the burglary count as the underlying offense to the felony-murder when the victim voluntarily allowed Mr. Plumley into his home. We find no merit in his allegations and affirm his conviction.

About 7:30 p.m. on January 15, 1984, a fire was discovered at the home of Roy Ball, age 72. Mr. Ball's badly charred body was found lying face up near the front door of his home. A railroad construction tool was found near Mr. Ball's head. The cause of Mr. Ball's death was determined to be blunt force injuries to the head and body burns. The blunt force injuries were consistent with the shape of a railroad construction tool discovered near the body. Later that same evening Mr. Ball's silver Cadillac was found on fire about 20 miles away near Chesapeake, Ohio.

Mr. Plumley and Richard Maddox were connected to the murder by certain circum-

stantial evidence.[1] Mr. Plumley and Mr. Maddox were seen walking along the railroad tracks near the victim's home shortly after 7:00 p.m. on January 15, 1984. Later that same evening they purchased some charcoal lighter fluid and gloves in a Tradewell store in Chesapeake, Ohio. The gloves were discovered in a vehicle with Mr. Plumley and Mr. Maddox. The bottle of lighter fluid with Mr. Plumley's fingerprints was found in the trunk of the victim's car. Mr. Plumley's fingerprints were also found on the car's taillight. A pillowcase found in the victim's car was determined to be similar in color, weave and fiber to a pillowcase owned by Mr. Plumley.

## I

Mr. Plumley contends that the trial court erred in allowing the jury to consider the burglary charge because under the state's evidence the victim voluntarily allowed Mr. Plumley into his home. According to Mr. Maddox, who claims to have acted as a lookout, Mr. Plumley rang the victim's door bell and asked if he could use the telephone because his car was broken down. After the victim allowed Mr. Plumley into his home, Mr. Plumley physically attacked him with a railroad construction tool that Mr. Plumley had picked up walking along the railroad tracks to the victim's house and stole a jar of coins. Later the jar of coins was discovered in the victim's car. Mr. Plumley argues that the victim's consent to enter is an absolute defense to

the count of burglary because the consent means there can be no unauthorized entry.

The crime of burglary is defined in *W.Va.Code*, 61-3-11(a) [1973] as:

Burglary shall be a felony and any person convicted thereof shall be confined in the penitentiary not less than one nor more than fifteen years. If any person shall, in the nighttime, break and enter, or enter without breaking, or shall, in the daytime, break and enter, the dwelling house, or an outhouse adjoining thereto or occupied therewith, of another, with intent to commit a felony or any larceny therein, he shall be deemed guilty of burglary.

The operative words of the statute, so far as this case is concerned, provide:

If any person shall, in the nighttime ... enter without breaking ... the dwelling house ... of another, with intent to commit a felony or any larceny therein, he shall be deemed guilty of burglary.

Thus under *W.Va.Code*, 61-3-11(a) [1973], the essential requirement of burglary committed in the nighttime is that the defendant "enter ... with intent to commit a felony or any larceny." It is the intent and acts of the accused that the statute makes controlling. There is no language in the statute that the entry must be by force or that it must be against the will of the occupant.[2] The plain language of the statute indicates that the consent of the occupant obtained through fraud or threat of force is not a defense to the crime of burglary.[3] Under statutes that define bur-

---

**1.** Richard Maddox, in a separate earlier trial, was convicted of the same charges and is incarcerated in the West Virginia State Penitentiary. Mr. Maddox testified voluntarily for the state although he was neither offered nor received anything in return.

**2.** Some states have attempted to include some of the common law "breaking" element by requiring the entry to be "unlawful" or be "unauthorized." *See* LaFave & Scott, *Substantive Criminal Law* § 8.13(a) (1986 ed.).

**3.** Mr. Plumley urges us to adopt a rule that an authorized entry is an absolute defense, even though the accused had the intent to commit a crime before entry. Neither of the two cases cited by Mr. Plumley is persuasive. In *State v. Boone*, 297 N.C. 652, 256 S.E.2d 683 (1979), the

defendant's conviction for felonious entry, was reversed because the store was open to the public when the defendant entered. The North Carolina Supreme Court noted that even the consent implied by being open to the public can be "void *ab initio*, as where the scope of consent as to areas one can enter is exceeded." (Citations omitted.) *Id.*, 297 N.C. at 659 n. 3, 256 S.E.2d at 687 n. 3. In *Commonwealth v. Starkes*, 268 Pa.Super. 108, 407 A.2d 853 (1979), the Superior Court interpreted a Pennsylvania statute which specifically excepted from burglary "premises [that] are at the time open to the public or the actor is licensed or privileged to enter." Although the defendant was found to have been privileged to enter, the court stated that "consent, license and privilege can be vitiated if they are 'induced by force, duress or deception.'" Even the cases cited by Mr. Plum-

glary as an entry without breaking with intent to commit a criminal offense, it is uniformly held that consent to enter is not a defense when the accused is shown to have entered through fraud or threat of force with the requisite criminal intent.[4]

In *State v. Louk,* 169 W.Va. 24, 26, 285 S.E.2d 432, 434 (1981), we noted the burglary statute had expanded to some degree the common law crime of burglary.[5] However, this expansion was not material to the *Louk* decision.[6] The West Virginia burglary statute's departure from the traditional common law requirement of "breaking" is significant because breaking was a concept designed to keep out intruders, or to prevent trespass into the building, and a person with authority to enter could not be said to have committed a breaking. LaFave & Scott, *supra* § 8.13(a). However, the common law requirement of "entry" was a physical concept, and even the slightest entry by any part of the perpetrator's body was sufficient to satisfy the requirement. LaFave & Scott, *supra* § 8.13(b).

Because the legislature has deleted the "breaking" requirement with regard to entry in the nighttime, the statutory offense of burglary of the dwelling house of another involves no unlawfulness of entry except as the entry becomes unlawful by reason of the criminal intent of the person entering.[7]

Even if an unauthorized or an entry against the will of the occupant were re- quired, the consent that was given to the defendant's entry would be vitiated by the misrepresentation that was used to obtain the consent. When a person exceeds the scope of consent granted for entry, the entry requirement for burglary is met. Even under the common law definition of burglary, a constructive breaking was deemed to have occurred when entry was gained by fraud or threat of force. La-Fave & Scott, *supra* § 813(a). In the present case, Mr. Plumley used fraud to gain entry and the victim was deceived into granting consent. *See Collins, supra* (Permission to use telephone is limited to specific area and single purpose). An entry obtained through fraud is unauthorized or against the will of the occupant.

## II

■ Mr. Plumley has two assignments of error concerning the sufficiency of evidence for the burglary and first degree arson counts. Syllabus Point 1, *State v. Starkey,* 161 W.Va. 517, 244 S.E.2d 219 (1978), stated our standard for appellate review:

> In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To war-

---

ley indicate an exception to the authorized entry defense when the entry exceeds the scope of the authorization.

4. *See U.S. v. Kearney,* 498 F.2d 61 (D.C.Cir. 1974); *State v. Gregor,* 11 Wash.App. 95, 521 P.2d 960 (1974) (superseded by statute as stated in *State v. Collins,* 110 Wash.2d 253, 751 P.2d 837 (1988)); *State v. Embree,* 130 Ariz. 64, 633 P.2d 1057 (App.1981); *People v. Nunley,* 168 Cal.App.3d 225, 214 Cal.Rptr. 82 (1st Dist.1985); *State v. High,* 281 So.2d 356 (Fla.1973); *Thomas v. State,* 94 Nev. 605, 584 P.2d 674 (1978). *See* Annot., 58 A.L.R.4th 335 (1987) and cases cited.

5. "The common law definition of burglary consisted of (1) breaking and (2) entering of (3) a dwelling house (4) of another (5) in the nighttime (6) with intent to commit a felony therein." (Citations omitted.) *Louk, supra,* 169 W.Va. at 26 n. 1, 285 S.E.2d at 434 n. 1.

6. In *Louk, supra,* we considered whether the offense of larceny is a lesser included offense of the crime of burglary. In *Louk, Id.* 169 W.Va. at 26, 285 S.E.2d at 434, we stated, "Our statute is consistent with the conclusion of most courts that the burglary is complete once there has been an unauthorized entry and a showing that there was an intent to commit a felony. (Citations omitted.)" However, our statute does not specify that the entry be unauthorized.

7. Even under statutes that require an unlawful entry, most jurisdictions have held that the entry, made with the necessary criminal intent, is unlawful. *See McCreary v. State,* 25 Ariz. 1, 212 P. 336 (1923); *People v. Schneller,* 69 Ill.App.2d 50, 216 N.E.2d 510 (1966); *Commonwealth v. Schultz,* 168 Pa.Super. 435, 79 A.2d 109, *cert. denied,* 342 U.S. 842, 72 S.Ct. 71, 96 L.Ed. 636 (1951).

rant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

*See State v. Deskins,* 181 W.Va. 112, 380 S.E.2d 676 (1989); *State v. Masters,* 179 W.Va. 752, 373 S.E.2d 173 (1988); *State v. Perdue,* 179 W.Va. 719, 372 S.E.2d 636 (1988); *State v. Hall,* 171 W.Va. 212, 298 S.E.2d 246 (1982).

In circumstantial evidence cases, our standard for review was stated in Syllabus Point 2 of *State v. Dobbs,* 163 W.Va. 630, 259 S.E.2d 829 (1979):

> Circumstantial evidence will not support a guilty verdict, unless the fact of guilt is proved to the exclusion of every reasonable hypothesis of innocence; and circumstances which create only a suspicion of guilt but do not prove the actual commission of the crime charged, are not sufficient to sustain a conviction.

*See Deskins, supra;* Syllabus Point 2 *Masters, supra;* Syllabus Point 1, *State v. Welker,* 178 W.Va. 47, 357 S.E.2d 240 (1987); Syllabus Point 1, *State v. Craft,* 165 W.Va. 741, 272 S.E.2d 46 (1980).

 In addition to the circumstantial evidence of the burglary count, Mr. Maddox testified to Mr. Plumley's plan and to Mr. Plumley's actions inside the house. On the first degree arson count, Mr. Plumley was seen near Mr. Ball's home shortly before the fire caused Mr. Ball's watch to stop at 7:39 and the wall clock, at 7:37. Mr. Maddox testified that Mr. Plumley left the home by the back door. A gas can that appeared to have been dropped recently on some snow was found near the back door shortly after the fire was discovered.

Based on our examination of the record, we find sufficient evidence of the burglary count; the first degree arson count was introduced at trial to convince an impartial jury of the guilt of the defendant beyond a reasonable doubt, and the evidence was not manifestly inadequate. Furthermore, we find that the jury could rationally conclude that the circumstantial evidence created more than only a suspicion of guilt and with the testimony of Mr. Maddox was sufficient to sustain a conviction.

## III

 Mr. Plumley's next assignment of error concerns his convictions for aggravated robbery and grand larceny. Mr. Plumley maintains that because both counts are based on the same property in the same transaction, his double jeopardy rights were violated.

*W.Va.Code,* 61-2-12 [1961] specifies the elements of aggravated robbery.[8] *State v. Harless,* 168 W.Va. 707, 712 n. 8, 285 S.E.2d 461, 465 n. 8 (1981), defined aggravated robbery as the "unlawful taking and carrying away of money or goods from the person of another, or in his presence, by the use of force or violence on the victim or through the use of a dangerous or deadly weapon or instrumentality, and with the intent to steal such property." The amount of money or the value of goods taken is irrelevant for an aggravated robbery count. *State v. Davis,* 176 W.Va. 454, 465, 345 S.E.2d 549, 560 (1986). When Mr. Plumley physically attacked Mr. Ball with a railroad construction tool and stole a jar of coins, all the elements of aggravated robbery were met.

---

8. *W.Va.Code,* 61-2-12 [1961] states in pertinent part:

If any person (a) by force and violence, or by putting in fear, feloniously takes, or feloniously attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management or possession of, any bank, he shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than ten nor more than twenty years; and if any person (b), in committing, or in attempting to commit, any offense defined in the preceding clause (a) of this paragraph, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, he shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than ten years nor more than twenty-five years.

*W.Va.Code*, 61–3–13(a) [1977] specifies the elements of grand larceny.[9] The record indicates that after Mr. Plumley robbed Mr. Ball and set Mr. Ball's home on fire, with Mr. Ball lying on the living room floor, Mr. Plumley took Mr. Ball's silver Cadillac. The Cadillac, valued at Five Thousand Five Hundred Dollars ($5,500), was taken to Ohio where Mr. Plumley set it on fire. All the elements of grand larceny were met.

In Syllabus Point 1, *State v. Neider*, 170 W.Va. 662, 295 S.E.2d 902 (1982), we stated:

> "The test of determining whether a particular offense is a lesser included offense is that the lesser offense must be such that it is impossible to commit the greater offense without first having committed the lesser offense. An offense is not a lesser included offense if it requires the inclusion of an element not required in the greater offense." Syllabus Point 1, *State v. Louk*, 169 W.Va. 24, 285 S.E.2d 432 (1981).

Although Syllabus Point 5, *Neider, supra,* states in part that "larceny is a lesser included offense in robbery," the conclusion was based on the legal test set out in Syllabus Point 1, *Louk, supra.* This conclusion does not uniformly apply to grand larceny and aggravated robbery because of additional required elements. *See Neider* 170 W.Va. at 664–65, 295 S.E.2d at 904, 905.

When Mr. Plumley took the jar of coins, he did so by force or by putting Mr. Ball in fear, but the amount of money taken was undetermined. When Mr. Plumley took the Cadillac, valued at more than Two Hundred Dollars ($200), he did not take it by force or by putting Mr. Ball in fear. Because Mr. Plumley's two separate offenses with differing elements arose from two distinct factual patterns, we find that Mr. Plumley was not entitled to a lesser included offense instruction.

**9.** *W.Va.Code,* 61–3–13(a) [1977] states:
If any person commits simple larceny of goods or chattels of the value of two hundred dollars or more, such person shall be guilty of a felony, designated grand larceny, and, upon conviction thereof, shall be confined in a pen-

## IV

Mr. Plumley's next assignment of error relates to the admission of a photograph taken of the interior of the victim's burned out living room. The photograph clearly shows a rifle on the floor in the foreground. The charred body of Mr. Ball is in the background, but it is difficult to see or identify. Concluding that the photograph was not gruesome, the trial court said, "You really have to look at it hard in my opinion to even determine there is, in fact, a body there."

In Syllabus Point 6, *State v. Buck,* 170 W.Va. 428, 294 S.E.2d 281 (1982) we stated:

> In order for photographs to come within our gruesome photograph rule established in *State v. Rowe,* [163] W.Va. [593], 259 S.E.2d 26 (1979), there must be an initial finding that they are gruesome.

*See* Syllabus Point 2, *State v. Dunn,* 162 W.Va. 63, 246 S.E.2d 245 (1978) (admission of photographic evidence rests in the sound discretion of the trial court). The record shows that the trial court did not abuse his discretion in determining that the photograph was not gruesome.

## V

The next assignment of error alleges that the trial court's failure to grant Mr. Plumley's motion of a change of venue denied him a fair trial. Our traditional standard for determining if a change of venue is warranted was recently restated in Syllabus Point 1, *State v. Ginanni,* 174 W.Va. 580, 328 S.E.2d 187 (1985):

> " 'To warrant a change of venue in a criminal case, there must be a showing of good cause therefor, the burden of which rests on the defendant, the only person who, in any such case, is entitled to a change of venue. The good cause aforesaid must exist at the time application for a change of venue is made. Whether, on the showing made, a change

itentiary not less than one nor more than ten years, or, in the discretion of the court, be confined in the county jail not more than one year and shall be fined not more than five hundred dollars.

of venue will be ordered, rests in the sound discretion of the trial court; and its ruling thereon will not be disturbed, unless it clearly appears that the discretion aforesaid has been abused.' Syl. pt. 2, *State v. Wooldridge*, 129 W.Va. 448, 40 S.E.2d 899 (1946)." Syl. pt. 2, *State v. Williams*, 172 W.Va. 295, 305 S.E.2d 251 (1983).

"Good cause shown" for a change of venue is defined in Syllabus Point 1 of *State v. Pratt*, 161 W.Va. 530, 244 S.E.2d 227 (1978) as:

> [P]roof that a defendant cannot get a fair trial in the county where the offense occurred because of the existence of locally extensive present hostile sentiment against him.

*See* Syllabus Point 3, *State v. McKinney*, 178 W.Va. 200, 358 S.E.2d 596 (1987); Syllabus Point 1, *State v. Baker*, 180 W.Va. 233, 376 S.E.2d 127 (1988) (prejudice against defendant must be so great that he cannot get a fair trial).

Our review of the record does not show that the trial court abused his discretion in determining that the defendant failed to meet his burden of proof to show good cause for a change of venue.

## VI

■ The next assignment of error concerns the trial court's decision to admit evidence of Mr. Plumley's flight.[10] In Syllabus Point 6, *State v. Payne*, 167 W.Va. 252, 280 S.E.2d 72 (1981), we stated:

> In certain circumstances evidence of the flight of the defendant will be admissible in a criminal trial as evidence of the defendant's guilty conscience or knowledge. Prior to admitting such evidence, however, the trial judge, upon request by either the State or the defendant, should

hold an *in camera* hearing to determine whether the probative value of such evidence outweighs its possible prejudicial effect.

*See Deskins, supra; State v. Harper*, 179 W.Va. 24, 365 S.E.2d 69 (1987); *State v. Jennings*, 178 W.Va. 365, 359 S.E.2d 593 (1987).

In the present case the trial judge held an *in camera* hearing during which he determined the probative value of the evidence outweighed the possible prejudicial effect.[11] We find the trial count did not abuse his discretion in admitting evidence of flight.

## VII

■ Mr. Plumley's next assignment of error concerns the introduction of a cartoon drawn by Mr. Plumley and hand-delivered by him to the prosecuting attorney.[12] On appeal Mr. Plumley argues that the introduction of the cartoon violated *W.Va. R.Evid.* 404(a)(1) [1984] that prohibits the introduction of evidence showing the bad character of the accused until the accused has first put his own character at issue by attempting to prove a previous good character. However, *W.Va.R.Evid.* 613 [1984] allows a witness to be examined concerning a prior statement provided: "Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same...." In *State v. Holmes*, 177 W.Va. 236, 239, 351 S.E.2d 422, 426 (1986), we stated that "proof of former inconsistent statements is admissible where a witness neither admits nor denies making them or where the response is ambiguous." (Citations omitted.)

**10.** *See State v. Plumley*, 179 W.Va. 356, 368 S.E.2d 726 (1988) for the facts surrounding Mr. Plumley's attempted escape.

**11.** Mr. Plumley argues, without any support, that because the state charged him with aggravated robbery and kidnapping rather than attempted escape, the state was prohibited from using the attempted escape as evidence of a guilty conscience. There is no requirement that a person be charged with attempted escape in

order to use the evidence to show a guilty conscience.

**12.** The cartoon depicts Trooper Wade, a state trooper who testified in the case, as saying and thinking various improprieties that if true, would show a conspiracy to deny Mr. Plumley a fair trial including: "I really shouldn't worry so much, cause Al [the presiding judge] is a big time Democrate [sic]. He'll make sure Plumley does time; one way or another!"

The record indicates that the cartoon was introduced during the cross-examination of Mr. Plumley after Mr. Plumley denied he disliked Trooper Wade and that he felt that various decisions of the trial court were based on local politics.[13] Because the cartoon demonstrated that Mr. Plumley's current statements were at variance with his previous statements, its use for impeachment purposes under *W.Va.R.Evid.* 613 [1984] was proper.

## VIII

■ Mr. Plumley's next several assignments of error allege that improper decisions by the trial court had the combined effect of denying him a fair trial. First, Mr. Plumley contends that the trial court erred in allowing him to act as co-counsel at his trial. Mr. Plumley requested to act as co-counsel after the trial court denied his motion to dismiss his appointed counsel because of a difference in opinion concerning which defense should be offered. However, "[a] disagreement over tactics or mere dissatisfaction with the services of court-appointed counsel does not, by itself, entitle the defendant to appointment of new counsel." *State v. Sheppard,* 172 W.Va. 656, 667, 310 S.E.2d 173, 185 (1983). *See* Syllabus Points 2 and 5 *Watson v. Black,* 161 W.Va. 46, 239 S.E.2d 664 (1977) (requiring a defendant to show good cause for the withdrawal of his court-appointed lawyer). The record indicates that Mr. Plumley was adequately represented by George Beter, his court-appointed counsel, and that the decision of the trial court to allow Mr. Plumley to act as co-counsel was not an abuse of discretion. *See Sheppard, supra,* 172 W.Va. at 673, 310 S.E.2d at 190.

■ Next Mr. Plumley submits as error the trial court's decision requiring his presence during an *in camera* hearing concerning the suggestiveness of a photographic line-up. Mr. Plumley's counsel requested that Mr. Plumley not be present and that another individual be substituted at the counsel table. The right of a defendant to be present at trial is fundamental and therefore any waiver of the right must be made voluntarily, knowingly, and intelligently. *See* Syllabus points 5 and 6, *State v. Neuman,* 179 W.Va. 580, 371 S.E.2d 77 (1988). We note that no attempt was made to vouch the record of a waiver by the defendant and that the photo identification made through proper nonsuggestive array, was not affected by Mr. Plumley's presence at the counsel's table.

■ Next Mr. Plumley contends that the presentation of a rebuttal witness during the state's case-in-chief was an abuse of the discretion by the trial court. The record indicates that Mr. Plumley, without objection, was allowed to present out-of-order, an expert witness on fingerprints because the expert had to be out of town. Directly after the defense's expert witness, the state, over the defense's objection, presented another fingerprint expert in rebuttal.[14] *W.Va.R.Evid.* 611 [1984] states in pertinent part:

> The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

The departure from the usual order of evidence introduction does not constitute error unless it is an abuse of the trial court's discretion. *See State v. Armstrong,* 179 W.Va. 435, 369 S.E.2d 870 (1988) (form of witness's testimony within trial court's sound discretion); *Holmes, supra,* (recall of witness within trial court's

---

**13.** Trooper Wade testified that at the time of his arrest, Mr. Plumley spontaneously made the following statement: "Be sure and call the TV stations and have them down there to see what a murderer looks like. The politicking motherfuckers." After Mr. Plumley denied making the statement, the questions concerning possible motives for the testimony arose.

**14.** The record indicates that the state thought that the defense had agreed to take all the fingerprint testimony together. Mr. Plumley's counsel and the trial court indicated that the agreement was simply to let the defense's expert testify out of order.

sound discretion). Allowing the jury to hear all the fingerprint evidence together, although the rebuttal witness was presented in the state's case-in-chief, does not amount to an abuse of the sound discretion of the trial court.

Next, Mr. Plumley contends that the prosecutor's closing statement concerning certain witnesses not called by the defense, shifted the burden of proof. During his closing statement, Mr. Plumley's counsel first noted that the state had failed to call certain witnesses and then said: "So you can ask yourselves where are these witnesses?" The prosecutor in his closing statement responded that the defense "has every right to go out and issue that subpoena and bring [the suggested witnesses] in here." In Syllabus Point 6, *State v. Hobbs*, 178 W.Va. 128, 358 S.E.2d 212 (1987), we stated:

> "A judgment of conviction will not be reversed because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice." Syllabus Point 5, *State v. Ocheltree*, 170 W.Va. 68, 289 S.E.2d 742 (1982).

*See* Syllabus Point 5, *State v. Harper*, 179 W.Va. 24, 365 S.E.2d 69 (1987). *See* Syllabus Point 7, *State v. Beckett*, 172 W.Va. 817, 310 S.E.2d 883 (1983); Syllabus Point 5, *State v. Sparks*, 171 W.Va. 320, 298 S.E.2d 857 (1982); Syllabus Point 7, *Buck, supra.*

The state's comment, viewed in light of the entire trial, including the closing argument of Mr. Plumley's counsel, does not clearly prejudice the accused or result in manifest injustice.

### IX

Finally, Mr. Plumley declares that the "cumulative error" doctrine enunciated in *State v. Smith*, 156 W.Va. 385, 193 S.E.2d 550 (1972), requires reversal of his conviction.[15] *Smith* tells us that the cumulative error doctrine will not apply unless "the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial." Syllabus point 5, *Smith, supra.* Our consideration of Mr. Plumley's assignments of error reveals that the errors were not numerous and did not prevent Mr. Plumley from receiving a fair trial.

For the above stated reasons, the judgment of the Circuit Court of Cabell County is affirmed.

Affirmed.

---

15. Mr. Plumley also contends that the trial court erred in sentencing him on February 18, 1985, Washington's Birthday, a legal holiday. However, legal proceedings held on legal holidays are not void. *Logan v. Ballard*, 61 W.Va. 526, 57 S.E. 143 (1907) (Labor Day, a legal holiday, is not a non-judicial day.); *Horn v. Perry*, 11 W.Va. 694 (1877) (Service of legal process on July 4th is not void.)