396 S.E.2d 760

**STATE of West Virginia**

v.

**John W. SCHOOLCRAFT.**

No. 19303.

Supreme Court of Appeals of
West Virginia.

July 25, 1990.

Larry E. Losch, Summersville, for John W. Schoolcraft.

Roger W. Tompkins, Atty. Gen., Joanna Tabit, Asst. Atty. Gen., Atty. Gen.'s Office, Charleston, for State of W.Va.

BROTHERTON, Justice:

This case is before the Court on the appeal of John W. Schoolcraft from the jury verdict which convicted him of two counts of first-degree sexual abuse and the March 2, 1989, order of the Circuit Court of Nicholas County, which sentenced the appellant to two concurrent terms of one-to-five years in the State penitentiary.

The appellant is a resident of Richwood, West Virginia, where he lives near Michael and Julie W., and their two daughters, Sabrina and Elizabeth, ages eight and five respectively. In September, 1987, the girls' father began to suspect sexual misconduct on the part of the appellant based upon comments made by his daughters. Consequently, he took the children to the State Police headquarters to talk with the authorities.[1]

On October 1, 1987, Elizabeth was examined by Dr. Kheyrolah Abedi, a general surgeon. The examination revealed that Elizabeth had a fused labia, which he believed resulted from an injury occurring approximately ten days prior to the examination. Dr. Abedi stated that his findings confirmed the parents' suspicion of molestation.

On October 1, 1987, West Virginia State Trooper M.R. Ensminger questioned the appellant regarding the alleged sexual abuse of Elizabeth W. On October 2, 1987, the Schoolcraft residence was searched for "one Alf doll, ... a cookie jar canister, a chair with no back or a broken back on wheels, a boom box radio, and doorknob in bedroom." The evidence was sought as substantiation of the veracity of the child's statements. The Alf doll was not found, although the other items were photographed. Thereafter, the appellant was arrested and charged with first-degree sexual assault of Elizabeth W.

On January 12, 1988, the grand jury returned an indictment against the appellant, charging him with two counts of first-degree sexual assault against Elizabeth W. and five-year-old Matthew T., a playmate of Elizabeth. Upon the appellant's counsel's motion, the two indictments were severed.

Elizabeth and Sabrina were interviewed by the West Virginia Department of Human Services about the alleged abuse. The videotaped interview consisted of questions posed by the children's mother, as well as Trooper Ensminger, Eugenia Moore from West Virginia University Hospital, and Trooper Carl Hosey. During the questioning, the children stated that John (the appellant) did not touch them. However, later in the same interview, Elizabeth affirmed that the appellant did indeed touch her.

On July 25, 1988, the trial began on Count One of the indictment concerning the sexual assault of Elizabeth W. The court specifically stated that the trial would proceed only on Count One against Elizabeth W., as the second count involving Matthew T. would not be prosecuted at that time.

At trial, Elizabeth and Sabrina testified that the appellant exposed himself and sexually abused them. Testimony was also elicited that the appellant threatened the children's parents if they told them about the "games." In response, the appellant attempted to introduce, as impeachment evidence, the videotaped interview of Elizabeth and Sabrina in which they initially stated that the appellant did not touch them. The trial court's refusal to allow the use of the videotape forms the basis of the appellant's appeal.

The prosecution also presented the testimony of Dr. Mark Tomsho, a pediatrician in Summersville, who examined Elizabeth at the request of the Department of Human Services. Dr. Tomsho stated that his examination revealed no physical evidence

---

1. Also involved was Matthew T., a playmate of Sabrina and Elizabeth W. Although the appellant was indicted for first-degree sexual assault on Matthew, the trial proceeded only on the first count involving Elizabeth W.

of sexual abuse. However, like Dr. Abedi, Dr. Tomsho found a fusion of the labia which he stated could be due either to abuse or, in rare cases, an allergy to soap or a bicycle injury. Dr. Tomsho noted that the American Journal of Obstetrics and Gynecology had concluded that such fusion could be considered a marker of sexual abuse. Based upon the history given by the mother, his examination, and the child's behavior, Dr. Tomsho concluded that it was his professional opinion that Elizabeth W. had been molested.

At the conclusion of the evidence, the trial court instructed the jury on the offenses of first-degree sexual assault and first-degree sexual abuse. The jury returned a verdict of guilty on two counts of first-degree sexual abuse. On March 2, 1989, the trial court sentenced the appellant to two concurrent sentences of not less than one nor more than five years in the State penitentiary. This proceeding is John Schoolcraft's appeal from that final order.

■ In his petition for appeal and brief, the appellant alleges that seventy-two separate errors occurred in the proceeding below. However, he fails to either argue the majority of these alleged assignments of error or direct the court's attention to specific errors in the record. "Assignments of error that are not argued in the briefs on appeal may be deemed by this Court to be waived." Syl. pt. 6, *Addair v. Bryant*, 168 W.Va. 306, 284 S.E.2d 374 (1981). Accordingly, we find the majority of the appellant's assignments of error to be waived. However, we do find merit in two separate assignments of error.

## I.

On January 12, 1988, the appellant was indicted on two separate counts of first-degree sexual assault. The first count involved Elizabeth W. and the second count involved Matthew T. The appellant was subsequently convicted of two counts of first-degree sexual abuse in the trial held in February, 1989. However, he was tried on only one count. On February 2, 1988, the prosecution stated:

... at this point I do not see how Matthew T. could ever appear in a jury trial. For that reason we would have no objection to going forward on the other count. The Court: The first count? ... This is the first count according to the copy in the file here. The first count involves Elizabeth W. The second count involves Matthew T., so you're going to go to trial on the first count is that correct?
Mr. Stollings: Yes sir.
The Court: You're not going to oppose, then, the motion to sever counts in this January, 88, indictment, No. 88–F–19, is that correct?

Later that same day, the court again noted that Matthew T. would not be involved in this trial, as the prosecution would proceed only on Count One.

Rule 52(b) of the West Virginia Rules of Criminal Procedure permits this Court to take notice of "plain error" which was not brought to the attention of the trial court. *State v. England*, 180 W.Va. 342, 376 S.E.2d 548, 554 (1988). This Court "will not ordinarily recognize plain error under such circumstances, even of constitutional magnitude, where the giving of the erroneous instruction did not substantially impair the truthfinding function of the trial." Syl. pt. 2, *State v. Hutchinson*, 176 W.Va. 172, 342 S.E.2d 138, 139 (1986). In this situation, we believe that a conviction on a charge that was not prosecuted at trial constitutes reversible error and warrants the application of the plain error doctrine.

■ "A conviction based upon evidence that varies materially from the charge contained in the indictment cannot stand and must be reversed." Syl. pt. 3, *State v. Nicholson*, 162 W.Va. 750, 252 S.E.2d 894 (1979), *overruled on other grounds, State v. Petry*, 166 W.Va. 153, 273 S.E.2d 346 (1980). Conversely, although an indictment may contain more than one charge, a defendant can only be convicted of the charges that were prosecuted at trial. Consequently, the lower court erred in convicting the appellant on two counts of first-degree sexual abuse when only one count was prosecuted at trial.

## II.

The second issue to be addressed is whether the child's answer that she did not recall making the videotaped interview was a sufficient "inconsistent" response to be able to utilize the prior video interview to impeach. Courts have encountered some difficulty with this question, as illustrated by this statement from 3 J. Weinstein & M. Berger, *Weinstein's Evidence*, ¶ 607[06], at 101–02 (1988):

> The most unsettled aspect of determining what amounts to an inconsistency is presented when a witness denies all recollection of a matter about which he had formerly made a statement. Can this former statement be regarded as inconsistent? The common law practice—still probably followed in most jurisdictions— would not consider such statements inconsistent and would not, therefore, permit their use even for impeachment purposes. Wigmore objects to a rule of blanket exclusion noting that
>
>> the unwilling witness often takes refuge in a failure to remember, and the astute liar is sometimes impregnable unless his flank can be exposed to an attack of this sort. An absolute rule of prohibition would do more harm than good, and the trial Court should have discretion.
>
> (*Citing* 3 Wigmore, *Evidence* § 1043 at 737 (3d ed. 1940); footnotes omitted).

Our own decisions are not a model of clarity. In several earlier cases, we adopted the rule that impeachment by a prior inconsistent statement can be made when the witness denies or does not recall making the prior statement. In syllabus point 1 of *State v. Worley*, 82 W.Va. 350, 96 S.E. 56 (1918), which involved a witness who could not remember making the prior statement, the Court stated that:

> After the foundation therefor is properly laid by calling his attention to prior statements inconsistent with his testimony, a witness may be impeached by proving such statements, and whether the witness denies or fails to recollect them is not material. Point 1 of the syllabus in *Robinson v. Pitzer*, 3 W.Va. 335, disapproved.[2]

In *State v. Spadafore*, 159 W.Va. 236, 220 S.E.2d 655 (1975), we dealt with the use of a prior inconsistent out-of-court statement where it was being offered as substantive evidence.[3] In the course of that discussion, we recognized the use of the statement for impeachment purposes and, without citing *Worley* or its progeny, concluded in syllabus point 2:

> [H]owever, where the witness does not testify contrary to his prior statement but demonstrates an absence of memory, such prior statement must be used sparingly to demonstrate lack of integrity in the witness or the reason for surprise to the party which calls him, but these legitimate purposes may not be used as a ruse for introducing inadmissible evidence.[4]

---

2. In *Addair v. Bryant*, 168 W.Va. 306, 284 S.E.2d 374 (1981), we discussed the foundation rule on impeachment at some length and concluded that a specific foundation for the prior statement was not necessary in order to interrogate the witness about the statement. This is consistent with W.Va.R.Evid. 613(a).

In *Spence v. Browning Motor Freight Lines*, 138 W.Va. 748, 77 S.E.2d 806 (1953), the witness denied making the prior statement and impeachment was permitted. We affirmed this ruling, citing our decision in *Worley*.

3. Syllabus point 1 of *Spadafore* states:

In a criminal case prior out-of-court statements made by a witness cannot be admitted into evidence for the truth of the matter asserted unless they were made under oath in a judicial atmosphere during the taking of a deposition or at a former trial and were sub-

ject at that time to cross-examination by the opposing party's counsel.

This is substantially consistent with W.Va. R.Evid. 801(d)(1)(A), as we recently observed in *State v. Collins*, 186 W.Va. 1, 409 S.E.2d 181 (1990).

4. *Spadafore* was decided prior to the adoption of the West Virginia Rules of Evidence. In *State v. Collins*, 186 W.Va. 1, 409 S.E.2d 181 (1990), we discussed at some length W.Va. R.Evid. 607, which deals with the impeachment of witnesses, and made these conclusions in syllabus points 3, 4, and 5:

3. Rule 607 of the West Virginia Rules of Evidence allows a party, including the one who called the witness, to impeach a witness by a prior inconsistent statement.

4. Rule 607 of the West Virginia Rules of Evidence does not free either party to intro-

Several cases following *Spadafore* have cited this syllabus point, yet have been somewhat ambiguous in their discussion. In *State v. Wayne*, 162 W.Va. 41, 245 S.E.2d 838 (1978), overruled by *State v. Kopa*, 173 W.Va. 43, 311 S.E.2d 412 (1983), the defense called a witness and then attempted to impeach him about a prior inconsistent statement.[5] The witness stated that he could recall giving the statement to the police, but did not remember what he had said. The trial court refused any impeachment evidence. While we did not cite *Worley*, we concluded that the trial court was correct as the "defendant's effort [was] to introduce the witness's prior statement as substantive evidence through the guise of impeachment." 162 W.Va. at 45, 245 S.E.2d at 842. Under *Worley*, if the use of the prior statement was solely for impeachment purposes, then the fact that the witness could not recall its contents would not preclude the impeachment.

On the other hand, in our per curiam opinion of *State v. Cochran*, 172 W.Va. 715, 310 S.E.2d 476 (1983), we held it was error for the trial court to permit the impeachment of a witness by a prior inconsistent statement when the witness stated he vaguely remembered giving the prior out-of-court statement, but could not remember its contents. Significantly, the witness who had been called by the State had refused to give any testimony, as he said he feared for his life because he was incarcerated in the West Virginia penitentiary.

In *Cochran*, the trial court permitted the impeachment by having the prosecutor read the statement to the jury. The court gave a limiting instruction to the jury to the effect that the statement could be used for impeachment purposes only and not for substantive evidence for proof of guilt. It also appeared that the witness was the State's chief witness. In *Cochran*, we held that the "trial court erred in permitting the witness to be impeached by his *ex parte* out-of-court statement. His refusal to acknowledge his earlier statement resulted in no factual testimony that could be impeached. In view of our disposition of this case on evidentiary grounds, we decline to discuss the Sixth Amendment confrontation issue."[6] *Id.* 172 W.Va. at 718, 310 S.E.2d at 479.

Unquestionably, *Cochran* involved some novel facts. In all of the preceding cases, the witness had actually testified about some of the events surrounding what was covered by the prior out-of-court statements. The question in these prior cases was whether the witness, after testifying, could be impeached by a prior inconsistent statement when the witness either denied making the prior statement or stated that he had no recollection of what was in the statement.[7]

█ Certainly, as *Worley* indicates, the general rule is that such impeachment is permissible. This accords with a number of jurisdictions which take the view that where a witness testifies about events which are covered in a prior out-of-court statement and the witness denies making

duce otherwise inadmissible evidence into trial under the guise of impeachment.
5. The balancing test in Rule 403 of the West Virginia Rules of Evidence should be used to determine whether impeachment evidence should be barred because its prejudicial effect outweighs its impeachment value.

5. In *State v. Kopa*, 173 W.Va. 43, 311 S.E.2d 412 (1983), we overruled prior case law, including *State v. Wayne*, 162 W.Va. 41, 245 S.E.2d 838 (1978), which stated that a party could not impeach his own witness, absent entrapment, hostility, or surprise. *Id.* 173 W.Va. at 54–55, 311 S.E.2d at 424. Instead, we adopted the rule embodied in Rule 607 of the Federal Rules of Evidence.

6. The Sixth Amendment confrontation issue arose because the witness had given no testimo-

ny to the jury except to answer a general question about making a prior statement to which he responded that he had only a vague recollection. The prosecutor's reading of the statement to the jury was claimed to have violated the precepts of *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).

7. In a number of cases, we have routinely approved impeachment by a prior inconsistent statement where the witness acknowledges the prior statement. *See, e.g., State v. Brown*, 179 W.Va. 681, 371 S.E.2d 609 (1988); *State v. Holmes*, 177 W.Va. 236, 351 S.E.2d 422 (1986); *State v. Kopa*, 173 W.Va. 43, 311 S.E.2d 412 (1983); *State v. Fellers*, 165 W.Va. 253, 267 S.E.2d 738 (1980).

the out-of-court statement or indicates no present recollection of its contents, then impeachment by a prior statement is permissible. It is also recognized that the trial court has the discretion to make the determination on admissibility. *E.g., State v. Butler*, 207 Conn. 619, 543 A.2d 270 (1988); *People v. Perri*, 381 Ill. 244, 44 N.E.2d 857 (1942); *People v. Malone*, 180 Mich.App. 347, 447 N.W.2d 157 (1989); *State v. Marco*, 220 Neb. 96, 368 N.W.2d 470 (1985); *State v. Burgos*, 200 N.J.Super. 6, 490 A.2d 316 (1985), *cert. denied*, 101 N.J. 304, 501 A.2d 961 (1985); *State v. Miles*, 73 Wash.2d 67, 436 P.2d 198 (1968); *State v. Lenarchick*, 74 Wis.2d 425, 247 N.W.2d 80 (1976). *See* Annot., 99 A.L.R.3d 906 (1980).

■ From a procedural standpoint, where the witness cannot recall the prior statement or denies making it, then under W.Va.R.Evid. 613(b), extrinsic evidence as to the out-of-court statement may be shown—that is, the out-of-court statement itself may be introduced or, if oral, through the third party to whom it was made. However, the impeached witness must be afforded an opportunity to explain the inconsistency. We addressed this rule in *State v. King*, 183 W.Va. 440, 444, 396 S.E.2d 402 (1990), where we quoted F. Cleckley, *Handbook on Evidence for West Virginia Lawyers*, § 4.2(b) 159 (2d ed. 1986):

> "*Extrinsic evidence* entails either calling a third party to testify to the existence and content of the prior inconsistent statement or presenting some documentary or *recorded form of the statement.* Rule 613(b) provides the requirements for extrinsic proof of a prior inconsistent statement." (Emphasis in original.)

In *King*, we also discussed the right of the impeached witness under W.Va.R.Evid. 613(b) to be afforded an opportunity to explain the inconsistency between the in-court testimony and the prior out-of-court statement:

> Again, Rule 613(b) provides, in part: "Extrinsic evidence of a prior inconsistent statement by a witness is not admissible *unless* the witness is afforded an

opportunity to explain or deny the same[.]" (emphasis supplied) The witness, B.K., was obviously afforded an opportunity to not only admit to making the prior inconsistent statements, but also to explain why she made such statements. "Where extrinsic evidence is introduced, Rule 613(b) of the Rules of Evidence requires that the impeached witness be afforded an opportunity to explain the inconsistency[.]" *State v. Holmes*, 177 W.Va. 236, 239, 351 S.E.2d 422, 426 (1986).

*Id.*

■ In the present case, the witness had testified about some of the events covered in the videotape. Thus, it was error for the court to reject any consideration as to the impeachment of the witness by the videotape merely because the witness stated that she had no recollection of making the videotape.

■ A second claim for the use of the videotape was to show that the witness had been coerced or improperly induced in her testimony. Recently, in *State v. King, supra*, we had occasion to discuss the use of a videotaped statement of a witness who claimed at trial that she had been under duress or coerced into making a prior out-of-court statement. The State sought to show the videotape to rebut her claim of duress or coercion. The trial court permitted this to be done, and we affirmed its ruling, stating in syllabus point 2 of *King* the applicable procedures:

> A videotaped interview containing a prior inconsistent statement of a witness who claims to have been under duress when making such statement or coerced into making such statement is admissible into evidence if: (1) the contents thereon will assist the jury in deciding the witness' credibility with respect to whether the witness was under duress when making such statement or coerced into making such statement; (2) the trial court instructs the jury that the videotaped interview is to be considered only for purposes of deciding the witness' credibility on the issue of duress or coercion and not as substantive evidence; and (3) the

probative value of the videotaped interview is not outweighed by the danger of unfair prejudice.

Here, we have a countervailing situation where the defendant wishes to show that the prosecution's witness was coerced or improperly coached into her testimony by showing the videotaped interview. Other courts have recognized that the issue of whether a witness has been coerced or improperly induced into the testimony is a question which bears upon the witness's credibility. *See e.g., United States v. Smith,* 550 F.2d 277 (5th Cir.1977), *cert. denied, Wallace v. United States,* 434 U.S. 841, 98 S.Ct. 138, 54 L.Ed.2d 105 (1977). We believe this Court also erred in not permitting the use of the videotaped interview on this basis.

For the foregoing reasons, the judgment of the Circuit Court of Nicholas County is reversed, and this case is remanded for proceedings consistent with this opinion.

Reversed and remanded.