547 S.E.2d 910

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Thomas ROGERS, Defendant Below, Appellant.**

No. 28201.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 23, 2001.

Decided May 11, 2001.

Dissenting Opinion of Justice Davis May 14, 2001.

Darrell V. McGraw, Jr., Attorney General, Stephen B. Stockton, Assistant Attorney General, Charleston, for Appellee.

James M. Pool, J. Robert Russell, Law Office of James M. Pool, Clarksburg, for Appellant.

ALBRIGHT, Justice.

Thomas D. Rogers appeals his convictions in the Circuit Court of Randolph County, after a jury trial, for the felony offenses of two counts of larceny by depriving another of property by means of a fraudulent scheme under West Virginia Code § 61–3–24d (1995) (Repl.Vol.2000), one count of larceny by obtaining property of another by false pretense under West Virginia Code § 61–3–24 (1994) (Repl.Vol.2000) and one count of larceny by embezzlement under West Virginia Code § 61–3–20 (1929) (Repl.Vol.2000).[1] Contending that the charges were internally inconsistent and that the conduct underlying the charges did not rise to the level of criminal conduct, Appellant claims that the trial court erred by not granting a motion for judgment of acquittal as to all counts. In addition, Appellant argues that the evidence introduced at trial was insufficient to support the convictions.

After a thorough review of these arguments in conjunction with the record, we conclude that two of the convictions constitute multiple convictions and sentences for the same acts which violated double jeopardy protections. We also conclude that the evidence adduced at trial was sufficient to sustain two convictions for larceny. Accordingly, we reverse and remand this case for new orders of conviction and sentencing consistent with this opinion.

I. Factual and Procedural Background

Appellant sold and installed computer hardware, as well as network and operating systems for computers through Micro Computer Associates, Inc., a company owned by him. In the summer of 1994, Appellant and his company entered into a contract with Micro Vane, Inc., a Michigan software company, to sell Micro Vane products to beer distributors in a seven state region as an authorized independent contractor, for which Micro Vane was to pay a commission on completed sales. The contract permitted Appellant to promote Micro Vane products as well as the products and services of Appellant's business.

Micro Vane specializes in a software inventory system, known as "dBEV® Beverage Management System" (hereinafter "dBEV®"), which automates the record keeping, reporting and accounting systems of beer wholesale companies. To enable Appellant to demonstrate the various components of the computer system to prospective buyers, Micro Vane supplied him with certain dBEV® software, two operating manuals and a hand-held computer/printer.[2] The demonstration software provided to Appellant did not contain all of the components of a licensed software package because some features could not be demonstrated.[3]

---

**1.** A charge for the felony offense of falsifying accounts (W. Va.Code § 61–3–22 (1923) (Repl. Vol.2000)) was dismissed by the trial court at the conclusion of the State's case-in-chief because there was insufficient evidence presented to support the charge.

**2.** The hand-held devices were for use by delivery personnel to issue receipts and record sales. Except for the hand-held device, Micro Vane did not sell or service computer hardware.

**3.** An example of such a component is an add-on program which enables customers using the Mi-

Appellant maintained that he provided an additional incentive to prospective Micro Vane customers who were already computerized but were using a different brand of record keeping software. To save the prospective Micro Vane customer the time and expense of re-keying the information from an existing data base, Appellant testified that he developed an automated method by which a customer's historical data could be converted to the Micro Vane system. He said that the service was routinely provided to Micro Vane customers, but that Micro Vane refused to pay for the service. Conflicting testimony was presented regarding the existence and quality of Appellant's data conversion system.[4]

Although its independent contractors could demonstrate and promote the dBEV® software, Micro Vane's general practice was to require the buyer to submit a completed software license agreement with a check for an agreed-upon price directly to its Michigan office before it released a licensed copy of the software to the buyer. If Micro Vane accepted the contract, it would send a licensed copy of the software that was assigned a unique serial number for each customer. Micro Vane included one year of technical support in the cost of all dBEV® license agreements. After the first year, an annual service or maintenance contract could be purchased for continued technical support. Customers accessed this technical support by toll-free phone calls to the Micro Vane staff located in Michigan.

In the summer of 1996, Micro Vane deviated from its custom of requiring payment and a signed license agreement in advance of releasing a copy of its software to a new customer when one of Appellant's prospective North Carolina customers insisted on receiving the product before tendering payment or signing a license agreement. On July 26, 1996, Micro Vane sent a copy of the dBEV® software and other related software to Appellant to assist him in closing a sale with the North Carolina company. Appellant testified that the customer then gave him $2,000 in earnest money[5] and signed a contract,[6] and Appellant began work on converting the customer's existing data to the Micro Vane program. Soon thereafter, Appellant was informed by the North Carolina customer that he had decided not to purchase the software from Appellant.[7] The evidence discloses that the customer subsequently obtained a new copy of the dBEV® software directly from Micro Vane. Appellant admitted that after the North Carolina customer withdrew from the contract, Appellant did not return the licensed dBEV® software or other related software to Micro Vane.

Although Appellant's written contract with Micro Vane expired on July 31, 1996, it was established at trial that Appellant was permitted to work as a Micro Vane sales representative during a period of contract renewal

cro Vane software to communicate via modem with their selected supplier brewery for reporting and restocking purposes.

4. The president of Micro Vane testified that he did not know whether Appellant had converted historical data for any of the Micro Vane sales he completed. A data conversion contractor who had formerly worked with Appellant, and who was on retainer with Micro Vane at the time of trial, testified that data conversion methods vary with each job performed because the software, hardware and operating systems of the users were rarely, if ever, the same. He also said that Appellant did not know how to complete a data conversion. A person who worked more recently for Appellant explained that his son had worked with Appellant on numerous occasions to convert historical data for customers. Additionally, one of Appellant's North Carolina customers testified that Appellant converted his historical data to the Micro Vane system which he had been using for three years without any significant problems.

5. The disposition of the earnest money is not at issue in the instant case.

6. The record does not establish if the contract was in the form of a Micro Vane license agreement, a contract with Appellant's company or both.

7. Appellant testified that he was told by the customer that Micro Vane had offered the customer free software if he would discontinue doing business with Appellant. According to Micro Vane's president, the North Carolina customer decided to deal directly with the Micro Vane office because he was concerned with how frequently Appellant missed appointments. Micro Vane's president also testified that the company made unsuccessful attempts to contact Appellant about paying him commission on this sale. The method or methods by which the contacts were attempted is not revealed in the record.

negotiations. However, by certified letter dated October 22, 1996, Micro Vane informed Appellant that his contract would not be renewed, and that the services of Appellant and Appellant's company were terminated, effective October 18, 1996. Micro Vane requested through this same communication that Appellant cease further sales activities on its behalf upon receipt of the letter and that Appellant forward a list of his active sales prospects to Micro Vane. Micro Vane agreed to pay commission on any sales to companies on the prospect list completed before December 31, 1996. In the letter of October 22, 1996, Micro Vane also requested that Appellant advise it about the number of Micro Vane hardware and software products in his possession so that arrangements for retrieving these items could be made. The president of Micro Vane testified that the only Micro Vane product which Appellant returned in response to the October 22, 1996, letter was the hand-held computer/printer. In addition to the software from the failed North Carolina sale noted above, Appellant failed to return any other Micro Vane software and instructional materials in his possession.

In late September or early October 1996, before receiving the October 22, 1996 non-renewal letter from Micro Vane, Appellant contacted a beer distributor in Elkins, West Virginia, known as Elkins Distributing Company, Inc. (hereinafter "Elkins"), as a potential Micro Vane software purchaser.[8] Appellant gave Elkins a business card which contained his business address and toll-free telephone number even though the name of his business, Micro Computer Associates, was not on the card.[9]

Testimony was offered at trial that Appellant demonstrated the dBEV® software for Elkins in "mid or mid-late" October 1996. Impressed with the system, Elkins entered into a sales contract with Appellant's company, Micro Computer Associates, Inc, dated November 18, 1996, for a total amount of $56,535. This total represented a $20,435

purchase by Elkins of Micro Vane products and a $36,100 purchase of computer hardware, to be supplied by Appellant. Although the Elkins employee involved in the sale testified that she believed she was purchasing a licensed software product, Appellant did not present the standard Micro Vane license agreement to Elkins at the time of sale. Appellant also did not ask that a check be issued to Micro Vane for any portion of the sale. Instead, Appellant asked Elkins to write all checks payable to the order of Micro Computer Associates. The down payment on the sale was made by check dated November 19, 1996, well after Appellant's relationship with Micro Vane had been terminated, and the final payment was made thereafter by check dated December 6, 1996. Bank records established that all proceeds from the Elkins sale were deposited in the Micro Computer Associates bank account and testimony further revealed that no money from this sale was remitted by Appellant to Micro Vane for any of its products.

Appellant delivered the hardware that Elkins purchased from his company under the contract. He installed on that hardware the Micro Vane dBEV® software which had been sent to him by Micro Vane in the aborted North Carolina sale. He also installed the Anheuser Busch software he had obtained from the same North Carolina transaction, as well as some of the software in the demonstration package Micro Vane had given to him. Appellant gave Elkins three training manuals: two of the manuals were part of the demonstration materials that Micro Vane supplied to Appellant and the third book, which provided information on the Anheuser Busch software, was obtained from the North Carolina company that chose not to purchase the Micro Vane system from him. Appellant informed Elkins during the course of the installation that any questions regarding service of the software in the first year should be directed to him at his toll-free number, rather than to Micro Vane.

---

8. Elkins is an Anheuser Busch beer distributorship servicing a five-county area.

9. The card read:

MICROVANE [sic] SOFTWARE
ROLAND SIGNCUTTERS

THOMAS D. ROGERS
PRESIDENT
RT 5, BOX 642, CLARKSBURG, WV 26301
1 800 310 BEER

According to the Elkins representative, Appellant indicated at the time of sale that the system should be in operation by early December 1996. Appellant was never able to make the dBEV® software fully operational, due at least in part to problems Appellant experienced in converting the Elkins data from its existing system to the Micro Vane system. The Elkins representative testified that she began having problems contacting Appellant for service, especially after his toll-free number was disconnected. The Elkins witness indicated, however, that a response was received for all service calls made, even after Appellant took a job in another state around June 1997.[10] Responses to service calls were sometimes made by Appellant and sometimes by other persons employed by Appellant's firm.

In April 1997, Appellant contacted Elkins to provide them with a price quote on a maintenance agreement for the hand-held computers.[11] Elkins was hesitant to enter into a maintenance agreement for equipment that was not yet in use until Appellant said that the quote would expire in mid-May and the next quote would likely be higher. After negotiations, Elkins agreed to pay $2,800 of the quoted price at that time and the remaining $1,690 when the hand-held devices were actually in operation. During this time period, Elkins asked Appellant for Micro Vane's phone number. According to the testimony of the Elkins representative, Appellant said there was no need to call Micro Vane and all calls should be directed to him instead. When Elkins told Appellant it needed a more reliable way to obtain timely support services for the software problems, Appellant said he did not have Micro Vane's telephone number but would bring it later. Concerned that the contract on its existing record keeping system was due to expire in a few months, Elkins obtained Micro Vane's telephone number from another distributor who also used the Micro Vane system. Elkins called Micro Vane in mid-May 1997 and discovered for the first time that it was not on Micro Vane's customer list and that no licensed copy of Micro Vane software had been issued to Elkins.

By letter dated May 29, 1997, Appellant informed Micro Vane that he did not owe any charge backs on commissions and that he had sold Elkins the Micro Vane software he obtained during the failed North Carolina sale. In this same letter, Appellant also stated that he considered the money he received in the Elkins transaction compensation for Micro Vane's failure to pay him for the data conversion program he had developed.

Elkins contacted the police on September 30, 1997, to begin an investigation of events surrounding its purchases from Appellant. As a result of the investigation, a five-count indictment was returned by the grand jury in Randolph County against Appellant in February 1999.[12]

A two-day jury trial began on June 15, 1999, and Appellant moved for a judgment of acquittal as to all counts of the indictment after the State rested and again at the conclusion of his case. One count relating to falsifying accounts was dismissed at the conclusion of the State's case-in-chief but the motion for acquittal was denied as to the remaining counts. The trial court also denied Appellant's request to require the State to elect between the charge of larceny by embezzlement or larceny by fraudulent scheme and larceny by false pretense.

The jury returned a guilty verdict for the following four felony offenses: for Appellant's dealings with Elkins, he was convicted of larceny by depriving the company of money, goods, property or services[13] by fraudulent scheme and of larceny by obtaining money, goods or other property by false pretense; for the transactions involving Micro Vane, he was convicted of larceny by depriving the business of money, goods, property or services by fraudulent scheme and of larceny by embezzlement. By order dated Au-

---

10. At this point in time, Appellant's father assumed responsibility for the maintenance contracts of Appellant's business.

11. The hand-held devices were purchased by Elkins as hardware from Appellant's company and not from Micro Vane.

12. The five-count indictment included the following charges: two counts of larceny by fraudulent scheme; one count of larceny by false pretense; one count of larceny by embezzlement; and one count of falsifying accounts.

13. Nothing in the record reveals that Appellant obtained any services from Elkins.

gust 2, 1999, Appellant was sentenced to consecutive terms of one to ten years for each conviction for a total sentence of four to forty years. The trial judge suspended the sentence, however, and placed Appellant on supervised probation for five years with payment of restitution to Elkins in the amount of $52,017.16, as one of the conditions of probation. Through this appeal, Appellant seeks a reversal of his convictions and the sentences imposed as a result thereof.

## II. Standard of Review

Appellant's assertions that the circuit court erred in not granting his motions for acquittal are reviewed under the following standard:

"' "Upon motion to direct a verdict for the defendant, the evidence is to be viewed in light most favorable to prosecution. It is not necessary in appraising its sufficiency that the trial court or reviewing court be convinced beyond a reasonable doubt of the guilt of the defendant; the question is whether there is substantial evidence upon which a jury might justifiably find the defendant guilty beyond a reasonable doubt." *State v. West,* 153 W.Va. 325, 168 S.E.2d 716 (1969).' Syl. pt. 1, *State v. Fischer,* 158 W.Va. 72, 211 S.E.2d 666 (1974)."

Syl. Pt. 10, *State v. Davis,* 176 W.Va. 454, 345 S.E.2d 549 (1986).

Issues raised concerning double jeopardy protections are reviewed *de novo.* Syl. Pt. 1, in part, *State v. Sears,* 196 W.Va. 71, 468 S.E.2d 324 (1996) ("[A] double jeopardy claim... [is] reviewed *de novo.*").

The standard of review for claims of insufficiency of evidence to support a conviction is embodied in our holding in syllabus point one of *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995):

The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of

the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

*Id.* at 663, 461 S.E.2d at 169.

## III. Discussion

Appellant's first two assignments of error relate to the trial court's denial of his motion for judgment of acquittal as to the two charges involving Elkins (larceny by depriving Elkins of property by fraudulent scheme and larceny by obtaining property from Elkins by false pretense), and the two charges involving Micro Vane (larceny by depriving Micro Vane of property by fraudulent scheme and larceny by embezzling Micro Vane property), on the ground that the four charges were inconsistent with each other and as to each victim.

The purpose of a motion for judgment of acquittal at the close of the State's case and at the close of all evidence is to afford a criminal defendant the opportunity to end the prosecution if there is insufficient evidence to prove that a crime has been committed or that the defendant committed the crime which the proof supports.[14] The relevant inquiry when a motion for judgment of acquittal is made is whether the evidence is sufficient to support a conviction of the crime charged. A review of the applicable record in this case reveals no error in the denial of the acquittal motions for insufficiency of evidence because, as hereafter discussed, there was substantial evidence introduced from which a jury might be convinced of Appellant's guilt beyond a reasonable doubt as to any or all of the four charges at issue here.

However, we construe the claim that the charges were inconsistent to fairly raise a second question: Whether any of the charges prosecuted constituted multiple convictions and multiple punishments for the same conduct, contrary to the principles of double jeopardy.[15] We proceed to review the

---

**14.** *See* 2 Cleckley, Franklin D., *Handbook on Evidence for West Virginia Lawyers* (4th ed.2000), § 12–2(C)(2)(discussing test of prosecution's case before verdict is reached).

**15.** U.S. Const. amend. V; W. Va. Const. art. III, § 5. *See also, State v. Salmons,* 203 W.Va. 561, 571 n. 13, 509 S.E.2d 842, 852 n. 13 (1998) ("Alleged errors of a constitutional magnitude

charges against Appellant under well-established principles of double jeopardy.

We begin our review with an examination of the offense of larceny, as defined in West Virginia law, because each of the offenses charged in the indictment in the instant case is statutorily defined as "larceny." Appellant claims that, at the most, his conduct constitutes but one offense, for which there is but a single punishment, rather than four crimes subject to four separate punishments, as construed by the court below. Unlike the states which have arranged several larceny-type offenses into a single statutory scheme for "theft" crimes,[16] West Virginia has retained the common law crime of larceny and supplemented it with statutory enactments. These supplemental statutes either specify alternate penalties for grand or petty larceny,[17] define larceny as a series of activities beyond those constituting larceny at common law,[18] or expressly authorize the aggregation of the value of property involved in a connected series of larcenous acts, defined either by common law or by statute, thereby allowing a more severe penalty where the sum of the values of such property meet or exceed the value required for felonious or "grand" larceny.[19]

■ One of the earliest of the statutory extensions of common law larceny to other acts was the creation of the crime of larceny by embezzlement;[20] another such extension was the definition of the crime of larceny by obtaining property by "false pretense."[21] The crime of larceny by fraudulent scheme is a more recent, 1995, example.[22] Since Appellant was charged with four separate crimes, all defined by our law as larceny, it is appropriate to review the indictments and convictions with care to assure that Appellant's constitutional protections against being twice tried and punished for the same conduct have been safeguarded. We set forth the protections afforded by the double jeopardy clauses of the United States and West Virginia Constitutions in syllabus points one and two of *State v. Gill,* 187 W.Va. 136, 416 S.E.2d 253 (1992):

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution consists of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

"The Double Jeopardy Clause in Article III, Section 5 of the *West Virginia Constitution,* provides immunity from further prosecution where a court having jurisdiction has acquitted the accused. It protects against a second prosecution for the same offense after conviction. It also prohibits multiple punishments for the same offense." Syllabus Point 1, *Conner v. Griffith,* 160 W.Va. 680, 238 S.E.2d 529 (1977). 187 W.Va. at 138, 416 S.E.2d at 255.

■ We have settled rules to determine whether the protection against double jeopardy has been violated. In examining double jeopardy issues in the context of multiple punishments imposed after a single trial, we

will generally trigger a review by this Court under the plain error doctrine.")

16. *See, e.g.,* Ariz.Rev.Stat. Ann. § 13–1802 (2000); Cal.Penal Code §§ 484, 490a (West 1999); Ill.Ann.Stat. ch. 720, para. 5/16–1 (2000); Kan. Stat. Ann. § 21–3701 (1994); La.Rev.Stat. Ann. § 14:67 (1999); Minn.Stat. Ann. § 609.52 (West 1999); Mont.Code Ann. § 45–6–301 (1999); Wis. Stat. Ann. § 943.20 (West 1993).

17. W. Va.Code § 61–3–13 (1994) (Repl.Vol. 2000), enacted in its original form in the Virginia Code of 1849 and 1860, and in the West Virginia Code of 1868.

18. *E.g.,* W. Va.Code § 61–3–18 (1923) (Repl.Vol. 2000) (receiving or transferring stolen goods); W. Va.Code § 61–3–20 (larceny by embezzlement); W. Va.Code § 61–3–22 (falsifying accounts).

19. *E.g.,* W. Va.Code § 61–3–24 (larceny by false pretense); W. Va.Code § 61–3–24d (larceny by fraudulent scheme); W. Va.Code § 61–3–24f (1999) (Repl.Vol.2000) (larceny by wrongfully seeking workers' compensation).

20. W. Va.Code § 61–3–20, enacted in its original form in the Virginia Code of 1849 and in the West Virginia in the Code of 1868.

21. W. Va.Code § 61–3–24, enacted in its original form in the Virginia Code of 1849 and in the West Virginia in the Code of 1868.

22. W. Va.Code § 61–3–24d.

look to the legislative intent as to punishment in the manner set forth in *Gill:*

> In ascertaining legislative intent, a court should look initially at the language of the involved statutes and, if necessary, the legislative history to determine if the legislature has made a clear expression its intention to aggregate sentences for related crimes. If no such clear legislative intent can be discerned, then the court should analyze the statutes under the test set forth in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), to determine whether each offense requires an element of proof that the other does not.

Syl. Pt. 8, in part, *Gill,* 187 W.Va. at 138, 416 S.E.2d at 255.

■ Accordingly, we now turn first to an examination of the three statutes defining the offenses at issue to determine whether there is a clear legislative intent expressed therein to create three distinct crimes, separately punishable. The three larceny statutes at issue are false pretense,[23] fraudulent scheme[24] and embezzlement.[25] We observe

that the only statutory provision found in any of these statutes which may intimate legislative intent with regard to multiple offenses and punishments is found in the sentence contained in the larceny by fraudulent scheme statute, stating that an individual "may be prosecuted...notwithstanding any other provision of this code." W. Va.Code § 61–3–24d(c). While this language appears to suggest, at first blush, that the Legislature thereby intended to make violation of this statute punishable as a separate and distinct crime, we conclude otherwise based on the fact that the language at issue fails to constitute a clear and definite statement of such an intent. *See* Syl. Pt. 5, *Sears,* 196 W.Va. at 73, 468 S.E.2d at 326 ("[T]he presumption is that double jeopardy principles have been violated unless there is a clear and definite statement of intent by the Legislature that cumulative punishment is permissible.").[26] Accordingly, we hold that the provision in West Virginia Code § 61–3–24d [defining the crime of larceny by fraudulent scheme] found in subsection (c), which reads, "A violation of law may be prosecuted under this section notwithstanding any other provi-

**23.** Larceny by false pretense is defined as follows:

> (a)(1) If a person **obtains** from another by any false pretense, token or representation, with intent to defraud, any money, goods or other property which may be the subject of larceny; ...
>
> ....
>
> (3) Such person is guilty of larceny. If the value of the money, goods or other property is one thousand dollars or more, such person is guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not less than one year nor more than ten years, or, in the discretion of the court, be confined in jail not more than one year and be fined not more than two thousand five hundred dollars. If the value of the money, goods or other property is less than one thousand dollars, such person is guilty of a misdemeanor, and, upon conviction thereof, shall be confined in jail not more than one year or fined not more than two thousand five hundred dollars, or both.

W. Va.Code § 61–3–24 (emphasis supplied).

**24.** Larceny by fraudulent scheme is defined as follows:

> (a) Any person who willfully **deprives** another of any money, goods, property or services by means of fraudulent pretenses, representations or promises shall be guilty of the larceny thereof.

> (b) In determining the value of the money, goods, property or services referred to in subsection (a) of this section, it shall be permissible to cumulate amounts or values where such money, goods, property or services were fraudulently **obtained** as part of a common scheme or plan.
>
> (c) A violation of law may be prosecuted under this section notwithstanding any other provision of this code.

W. Va.Code § 61–3–24d (emphasis supplied).

**25.** Larceny by embezzlement is defined as follows:

> If ... any agent, clerk or servant of any firm or person, or company or association of persons not incorporated, embezzle or fraudulently convert to his own use, bullion, money, bank notes, drafts, security for money, or any effects or property of any other person, which shall have come into his possession, or been placed under his care or management, by virtue of his office, place or employment, he shall be guilty of the larceny thereof.

W. Va.Code § 61–3–20.

**26.** *Cf.* W. Va.Code § 61–8D–5(a) (1998) (Repl. Vol.2000), as a clear legislative statement of intention to create a separate and distinct offense, with separate and additional punishment: "In addition to any other offenses set forth in this code, the Legislature hereby declares a separate and distinct offense under this subsection[.]"

sion of this code," does not express a clear legislative intent to create a separate and distinct offense, with separate, additional punishment for the same acts.

■ Having found no clear legislative intent to define a separate and distinct offense with additional punishment, we turn to the analysis first required by *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and consistently applied by this Court as an appropriate analysis under West Virginia's constitutional prohibition against double jeopardy as well as the federal prohibition found in the Fifth Amendment to the Constitution of the United States:

> "Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." Syllabus Point 8, *State v. Zaccagnini*, 172 W.Va. 491, 308 S.E.2d 131 (1983).

Syl. Pt. 6, *Gill*, 187 W.Va. at 138, 416 S.E.2d at 255.

First, we examine the elements of the two larceny offenses of which Appellant was convicted with respect to Elkins, obtaining money, goods and services by false pretense in violation of West Virginia Code § 61–3–24, and depriving another of money, goods and services by a so-called "fraudulent scheme" in violation of West Virginia Code § 61–3–24d. As an aid to reviewing the elements constituting these offenses, we offer the following comparison of the two statutes in chart format.

| Code § 61–3–24d—as stated [Fraudulent Scheme] | Code § 61–3–24d—as re-stated for analysis [Fraudulent Scheme] | Code § 61–3–24—as stated [False Pretense] |
|---|---|---|
| Any person who | [If a] person | If a person |
| wilfully deprives | deprives | **obtains** |
| another | another | *from another* |
| of any money, goods, property or services | **by means of fraudulent** pretenses, representations or **promises** | by any **false** pretense, **token** or representation |
| by means of fraudulent pretenses, representations or promises | **wilfully** of any money, goods, property or **services** | with intent to defraud any money, goods or **property which may be the subject of larceny** |
| shall be guilty of larceny. | **such person is** guilty of larceny. | such person is guilty of larceny. |

**Bold: Indicates variations in language (1) from that in the statute, or (2) supplied here to aid this analysis.**

■ As the chart illustrates, the larceny by fraudulent scheme statute requires that a person "deprive" another of property while the larceny by false pretense statute requires that the property be "obtained." According to the accepted meaning[27] of the term deprive, we note that "to deprive" one of property is to "dispossess" another of that property.[28] Under the particular facts of this case, we perceive no material or substantial difference in the terms "deprive" and "obtain." Further support for this conclusion is suggested by the fact that the word "obtained" is used interchangeably with "deprived" in subsection (c) of the larceny by fraudulent scheme statute.[29]

27. " 'In interpreting a statute, each word of the statute should be given some effect, and if undefined will be given its common, ordinary, accepted meaning.' " *State v. Mullins*, 181 W.Va. 415, 419, 383 S.E.2d 47, 51 (1989) (quoting *Nelson v. Merritt*, 176 W.Va. 485, 488, 345 S.E.2d 785, 787–88 (1985)).

28. WEBSTER'S NEW INTERNATIONAL DICTIONARY 703 (unabridged 2d ed.1958) provides the following definitions for deprive and obtain:
Deprive—To dispossess; bereave; divest; to hinder from possessing; debar; shut out.

Obtain—To get hold of by effort; to gain possession of; to procure; to acquire in any way.

29. This subsection of the larceny by fraudulent scheme statute provides that:
In determining the value of the money, goods, property or services referred to in subsection (a) of this section, it shall be permissible to cumulate amounts or values where such money, goods, property or services were fraudulently **obtained** as part of a common scheme or plan.
W. Va.Code § 61–3–24d(c) (emphasis supplied).

Continuing the analysis, we note that the larceny by fraudulent scheme statute requires that the perpetrator act "by means of fraudulent pretenses, representations or promises,"[30] while the larceny by false pretense statute requires that the act be done by "any false pretense, token or representation."[31] A comparison of these statutory elements demonstrates no substantive difference with regard to the method of deceit which may be employed to commit either crime under either definition being reviewed.

With regard to intent, the larceny by fraudulent scheme statute requires that the perpetrator act "wilfully[32]" to acquire the property of another by means of fraudulent pretenses, representations or promises, whereas the larceny by false pretense statute requires that one obtain property by any false pretense, token or representation "with intent to defraud."[33] We note that the jury was properly instructed below as follows: The term "wilfully," requires that the perpetrator have the specific intent to commit the offense; the terms "false pretense" or "representation" or "promise" mean a pretense, representation or promise that was in fact not true or was otherwise a false statement; and the term "fraud" means an intentional perversion of truth for the purpose of inducing others to part with something of value or part with a legal right. Again, we discern no substantial difference between one who acts with specific intent to deprive another of his property using false statements and one who acts "with the intent to defraud" by employing false representations.

Concerning the type of property covered by the two respective statutes, we note that the larceny by fraudulent scheme statute applies to acquiring property or "services",[34] whereas the larceny by false pretense statute pertains to property "which may be the subject of larceny."[35] Whatever arguable impact this dichotomy may have in some circumstances, it is not relevant under the facts of the present case because property other than services is at issue. Appellant did not seek or receive the "services" of Elkins by his actions, but rather sought, obtained from, and deprived, Elkins of its money. There can be no question that money qualifies as property which is clearly a proper "subject of larceny." W. Va.Code § 61–3–24(a)(1).

Based on the foregoing statutory comparison, we hold that every element necessary for a larceny conviction under West Virginia Code § 61–3–24 (false pretenses) is also an element for a larceny conviction under West Virginia Code § 61–3–24d (fraudulent scheme). Consequently, Appellant's convictions and related sentences under both statutes with regard to the money obtained from Elkins cannot stand based on double jeopardy proscriptions.

Having concluded that Appellant's actions involving the Elkins sale constitute only one offense of larceny, we now address the question of whether the evidence adduced below was sufficient to sustain Appellant's conviction. From our review of the record, we determine that the evidence introduced at trial was sufficient for a jury to conclude that the Appellant obtained, and thus dispossessed or deprived that firm of, a sum of money. Ample evidence was introduced from which the jury could have concluded that Appellant obtained that sum of money by fraudulently representing and promising to sell and deliver to Elkins a software package and manuals that he did not own, but simply possessed as a former agent of Micro Vane. The jury heard evidence that Appellant's representations and promises convinced Elkins that Appellant had the right to receive payment for the software package and manuals. The jury also heard evidence that Appellant had no such right, title or interest to this property, which belonged solely to Micro Vane, and, further, that Appellant knew he had no such right, title or interest to these items at the time he made those representations and promises to Elkins. The evidence is clearly sufficient to allow the jury to conclude that Appellant intentionally deprived (dispossessed) Elkins of its money, by words and

**30.** W. Va.Code § 61–3–24d(a).

**31.** W. Va.Code § 61–3–24(a)(1).

**32.** W. Va.Code § 61–3–24d(a).

**33.** W. Va.Code § 61–3–24(a)(1).

**34.** W. Va.Code § 61–3–24d(a).

**35.** W. Va.Code § 61–3–24(a)(1).

deeds which perverted truth and were calculated to induce Elkins to part with its money. Consequently, we conclude that the jury might properly find Appellant guilty of a single act of larceny with regard to the property of Elkins. Accordingly, Appellant was subject to punishment therefor, but not twice.

We now turn to the counts of the indictment that allege crimes against Micro Vane: (1) larceny by embezzlement, as defined in West Virginia Code § 61–3–20 and, (2) larceny by fraudulent scheme as defined by West Virginia Code § 61–3–24d. Since there clearly is no language in either of these statutes (governing larceny by embezzlement and larceny by fraudulent scheme) suggesting legislative intent to create separate, distinct offenses permitting multiple punishment, we proceed with the *Blockburger/Zaccagnini/Gill* analysis of these statutes.

In performing this analysis, we confine our examination of the larceny by embezzlement statute to the specific type of embezzlement charged in the indictment in the present case and do not address the several alternative definitions of the crime contained in the statute. As demonstrated by the following chart, every element necessary for a conviction under West Virginia Code § 61–3–24d (larceny by fraudulent scheme) is also an element in the crime of larceny by embezzlement under West Virginia Code § 61–3–20 as charged in the indictment before us, with one exception which we shall discuss.

| Code § 61–3–24d—as stated<br>[Fraudulent Scheme] | Code § 61–3–24d—as re-stated<br>for analysis<br>[Fraudulent Scheme] | Code § 61–3–20—as stated<br>[Embezzlement] |
|---|---|---|
| Any person who | Any person who | If [any person who is] |
| | | **any agent, clerk or servant of any firm, person or company** |
| wilfully deprives another | wilfully deprives another | **embezzle or fraudulently convert to his own use** |
| | by means of fraudulent pretenses, representations or promises | |
| of any money, goods, property or services | of any money, goods, property **or services** | money . . . **or any effects** or property of any other person |
| by means of fraudulent pretenses, representations or promises | | |
| | | **which shall have come into his possession or been placed under his care or management by virtue of his office, place or employment** |
| shall be guilty of larceny. | shall be guilty of larceny. | **he** shall be **guilty of the larceny thereof.** |

Bold: Indicates variations in language (1) from that in the statute, or (2) supplied here to aid this analysis.

We begin our discussion of the Micro Vane charges with the elements defining the method by which an unlawful taking occurs under each statute. The method by which the property may be misappropriated under the larceny by embezzlement statute is by fraudulent conversion, whereas, under the larceny by fraudulent scheme statute it is by wilful deprivation. The similarity between these methods of misappropriation of property is more apparent than that found in our earlier comparison of this element with regard to the offenses involving Elkins: One who converts the property of another to his or her own use has, by that act, wilfully deprived the owner of that property. Moreover, the

very act of converting another's property to one's own use requires the employment of some pretense, representation or promise that is both false and fraudulent. By necessity, an embezzler employs some artifice or device by which sole ownership and unlimited dominion over the property is asserted, purportedly free and clear of the title of the rightful owner.

As noted in our discussion of the Elkins offenses, "services" is included in the type of property the larceny by fraudulent scheme statute is intended to protect. The larceny by embezzlement statute does not expressly include services. The significance of this difference has no bearing in the present case because the evidence introduced at trial failed to disclose any effort on the part of Appellant to deprive Micro Vane of "services."

■ The element that differs between the larceny offenses of embezzlement and fraudulent scheme involves who may be found guilty of the crime. Only a person who is an agent, clerk or servant of another, into whose hands the property came by virtue of such a trust relationship, may be found guilty of embezzlement, whereas the fraudulent scheme statute has no such limiting language. Under the *Blockburger/Zaccagnini/Gill* analysis that single difference in the two statutes would not defeat a double jeopardy claim because those cases require that *each offense* have an element the other does not in order to avoid double jeopardy. *See* Syl. Pt. 8, *State v. Zaccagnini,* 172 W.Va. 491, 308 S.E.2d 131 (1983) ("Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test . . . is whether *each* provision requires proof of an additional fact which the other does not.")

(emphasis supplied). Based on the foregoing statutory comparison, we hold that, in the absence of proof that a defendant obtained "services" by a fraudulent scheme, every element necessary for a conviction of larceny by fraudulent scheme under West Virginia Code § 61-3-24d is also an element for conviction of an agent or employee for larceny by embezzlement under West Virginia Code § 61-3-20.[36] Consequently, Appellant's convictions and related sentences under both statutes for the larceny of the property of Micro Vane cannot stand, based on double jeopardy proscriptions.[37]

■ We now address the question of whether the evidence adduced below was sufficient to sustain a conviction of each of the crimes Appellant was charged with committing against Micro Vane. There was evidence in the record that Appellant, while an agent of Micro Vane, came into the possession of certain software and related manuals belonging to Micro Vane. The evidence further demonstrated that Micro Vane never relinquished ownership of those items and that Appellant perverted the truth and falsely asserted, represented to and promised Elkins that he could and would sell the Micro Vane software and manuals to Elkins. Finally, evidence was introduced to prove that Appellant obtained at least a portion of the money Elkins paid him by reason of his assertion of ownership of the software and manuals which were the property of Micro Vane, and thereby fraudulently converted the Micro Vane property to his own use.[38] We conclude that the jury might properly find Appellant guilty of a single act of larceny of the property of Micro Vane. Accordingly, Appellant was subject to punishment therefor, but not twice.

**36.** It is at least arguable that "services" may have been made "property which may be the subject to larceny" by the enactment of the fraudulent scheme statute. *See* W. Va.Code §§ 61-3-24d, 61-3-20.

**37.** We note the holding by this Court in *State v. Pietranton,* 140 W.Va. 444, 84 S.E.2d 774 (1954), where the Court stated without analysis that "[T]he offense charged in the indictment [embezzlement] in the instant case is a wholly different offense from that charged in the former indictment [false pretense]," *apparently solely on the basis that the crimes were defined in separate statutory enactments. Id.* at 449, 84 S.E.2d at

780 (emphasis supplied). While we do not have occasion in this proceeding to compare those two statutes, we do conclude that *Pietranton* provides no basis to challenge the tests set forth under *Blockburger/Zaccagnini/Gill* or the conclusions we have drawn in the present case when applying those tests.

**38.** While the record revealed Appellant undertook to sell certain equipment and services to Elkins as a part of his business, Micro Computer Associates, no allegation regarding these sales is the subject of any count of the indictment before us.

We cannot agree with the State's contention on appeal that the evidence supports the conviction of two larcenous acts against Micro Vane. The evidence presented at trial regarding the Micro Vane property did not attempt to differentiate between the property which was taken or that Appellant acted with a different motivation or intent with regard to acquiring the property on separate occasions. Consequently, the jury could not properly conclude, based on the evidence before it, that more than one act of larceny of the property of Micro Vane occurred.

Appellant claims that his dealings with Elkins and Micro Vane were simply a business deal "gone wrong" for which he sought relief by way of self-help, all of which he contends was resolved by his civil settlement agreement. We can appreciate Appellant's frustration. The difficulty with Appellant's argument is that the jury, on the evidence before it, found that Appellant's conduct crossed the line into criminal conduct that was fraudulent. The criminal law provides a redress for such fraudulent conduct.

Next, we address Appellant's argument that his dealings with Elkins and Micro Vane were, at worst, a single criminal act. This state has recognized the so-called "single larceny doctrine" in the context of the offense of receiving, concealing or transferring stolen property.[39] Syl. Pt. 9, *State v. Hall*, 171 W.Va. 212, 298 S.E.2d 246 (1982) ("[W]here the State proves that a defendant received or aided in the concealment of property which was stolen from different owners on different occasions, but does not prove that the defendant received or aided in the concealment of the property at different times or different places then such defendant may be convicted of only one offense...."). The single larceny doctrine has been stated even more broadly in other jurisdictions. *See West v. Commonwealth*, 125 Va. 747, 99 S.E. 654, 656 (1919) ("[A] series of larcenous acts, regardless of amount and value of the separate parcels or articles taken, and regardless of the time occupied in the performance, may and will constitute ... a single larceny, pro-

vided the several acts are done pursuant to a single impulse and in execution of a general fraudulent scheme.").

■ We decline to extend the single larceny doctrine to the circumstances of this case. There was proof adduced at trial that the property of each victim was taken at different times and in different places. The State also introduced evidence that the actual acts of misappropriation were committed separately, with intent to separately defraud each victim with regard to its individual property. Clearly, two victims suffered at the hand of Appellant, Elkins and Micro Vane. Under these circumstances, the single larceny doctrine has no application.

■ Finally, we are compelled to question whether allowing the jury to consider all four charges at issue in this cause when Appellant, at most, was subject to punishment for only two offenses of larceny constituted reversible, prejudicial error, requiring a new trial or whether some less drastic remedy might be fashioned. We are mindful of our holding in *State v. Koton*, 157 W.Va. 558, 202 S.E.2d 823 (1974), that the failure to instruct the jury that it might return a verdict of guilty to no more than one of two inherently inconsistent offenses constitutes reversible error. The offenses in the instant case represent alternative theories for proving larceny, involving the same criminal conduct as to each victim. The situation here is much more akin to an indictment charging premeditated murder and, alternatively, felony murder. In these latter circumstances, this Court has held that the case may be put to the jury under either theory, that the jury may convict under either theory and that it is of no moment if some of the jurors convicted under one theory and the rest under the alternative theory so long as the entire jury agreed upon the verdict of guilty.[40] We believe that under the circumstances here, it is appropriate to treat the jury verdict in like manner, as two findings of guilt, one for the larceny of the property of Elkins and the other for the larceny of the property of Micro Vane.[41] As a consequence, it is not necessary

---

39. W. Va.Code § 61-3-18.

40. *Stuckey v. Trent*, 202 W.Va. 498, 505 S.E.2d 417 (1998); *see also Schad v. Arizona*, 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991).

41. It is clear that the larceny in each case is of sufficient value to constitute a felony.

in our view to order a new trial. All four of the offenses before us are expressly stated by the statutes defining them to constitute larceny. It will be sufficient here to correct the conviction record and to re-sentence Appellant for two counts of larceny,[42] that is, one count as to each victim.

For the reasons assigned, we do not disturb the verdicts of guilty returned against Appellant, but reverse the order of conviction entered July 6, 1999, and the sentencing order of August 22, 1999, and remand the case to the Circuit Court of Randolph County, with directions to enter a new order of conviction on the indictments and verdicts of the jury thereon heretofore returned, finding Appellant convicted of the offense of larceny with respect to the indictments charging larceny of the property of the victim Elkins, and finding Appellant convicted of the offense of larceny with respect to the indictments charging larceny of the property of the victim Micro Vane, and with the further directions to re-sentence Appellant upon the two convictions so entered. By requiring the entry of new conviction and sentencing orders, we do not mean to imply that a further pre-sentence report is required or that the trial court's discretion in permitting probation or imposing consecutive or concurrent sentences should be disturbed. We leave those matters to the sound discretion of the trial court.

Reversed and remanded with directions.

DAVIS, J., dissents and files a dissenting opinion.

DAVIS, Justice, dissenting.

(Filed May 14, 2001)

The decision reached by the majority opinion in this case is disturbing to me for two reasons. First, the majority opinion has utilized constitutional double jeopardy principles to analyze the issues in this case when the defendant did not invoke double jeopardy as a basis for challenging the convictions and sentences. The majority opinion *sua sponte* invoked double jeopardy to reach the result achieved in this case. Second, assuming the

defendant had raised double jeopardy principles, there was no double jeopardy violation in this case. For these reasons, I dissent from the majority opinion.

## I.

### Convictions and Sentences Involving Elkins Distributing Company

The defendant in this case was convicted and sentenced for committing the crimes of fraudulent schemes and false pretenses against Elkins Distributing Company (hereinafter referred to as "Elkins"). Before this Court, the defendant made a simple sufficiency of the evidence argument as to both crimes against Elkins. The defendant argued: "There was simply no proof at trial that the defendant obtained anything by means of false pretenses or fraudulent conduct from Elkins Distributing Company."

The defendant's basic argument of insufficiency of evidence, which the state had an opportunity to address and did address in its brief, was *sua sponte* transformed by the majority opinion into a claim that double jeopardy barred the defendant from being convicted and sentenced for both offenses against Elkins. There was absolutely no mention in the defendant's brief, nor any reasonable inference therefrom, that double jeopardy applied to the crimes against this victim. Consequently, the majority was wrong in addressing the issue of double jeopardy. This Court has developed a long line of cases where we have consistently held that "errors neither briefed nor argued are ... considered abandoned." *State v. Goodmon,* 170 W.Va. 123, 125 n. 1, 290 S.E.2d 260, 262 n. 1 (1981). *See also State v. Lockhart,* 208 W.Va. 622, 627 n. 4, 542 S.E.2d 443, 448 n. 4 (2000) ("Assignments of error that are not argued in the briefs on appeal may be deemed by this Court to be waived."); *State v. Helmick,* 201 W.Va. 163, 172, 495 S.E.2d 262, 271 (1997) (same); *State v. Potter,* 197 W.Va. 734, 741 n. 13, 478 S.E.2d 742, 749 n. 13 (1996); (same); Syl. pt. 9, *State v. Garrett,* 195 W.Va. 630, 466 S.E.2d 481 (1995) (same);

---

**42.** If such a dual prosecution should arise in the future, wherein the State is at liberty to pursue alternative theories of larceny but only one punishment, the trial court should instruct the jury that it may return only one verdict regarding each victim, either guilty or not guilty of larceny of the property of X.

*State v. George W.H.*, 190 W.Va. 558, 563 n. 6, 439 S.E.2d 423, 428 n. 6 (1993) (same); *State v. Lola Mae C.*, 185 W.Va. 452, 453 n. 1, 408 S.E.2d 31, 32 n. 1 (1991) (same); Syl. pt. 1, *State v. Schoolcraft*, 183 W.Va. 579, 396 S.E.2d 760 (1990) (same); *State v. Sayre*, 183 W.Va. 376, 379 n. 2, 395 S.E.2d 799, 802 n. 2 (1990) (same); *State v. Stacy*, 181 W.Va. 736, 739 n. 3 384 S.E.2d 347, 350 n. 3 (1989) (same); *State v. Moss*, 180 W.Va. 363, 374 n. 16, 376 S.E.2d 569, 580 n. 16 (1988) (same); *State v. Flint*, 171 W.Va. 676, 679 n. 1, 301 S.E.2d 765, 768 n. 1 (1983) (same); *State v. Fairchild*, 171 W.Va. 137, 150 n. 7, 298 S.E.2d 110, 123 n. 7 (1982) (same); *State v. Buck*, 170 W.Va. 428, 430, n. 2, 294 S.E.2d 281, 284 n. 2 (1982) (same); *State v. Church*, 168 W.Va. 408, 410 n. 1, 284 S.E.2d 897, 899 n. 1 (1981) (same). Because of this Court's history of prohibiting appellate consideration of an issue not raised as an assignment of error, the majority opinion was without legal justification to *sua sponte* resolve the Elkins crimes on an issue not raised by the defendant.[1]

Assuming arguendo that the defendant alleged double jeopardy as an assignment of error to the Elkins crimes, there was no double jeopardy violation in his convictions and sentences for the crimes of fraudulent schemes and false pretenses. The statute setting out the fraudulent schemes offense specifically states that "[a] violation of law may be prosecuted under this section notwithstanding any other provision of this code." W. Va.Code § 61–3–24d(c). Clearly, the legislative intent provides that this crime may be punishable regardless of any other

criminal statute. Our cases have held that "[i]n ascertaining legislative intent, a court should look initially at the language of the involved statutes and, if necessary, the legislative history to determine if the legislature has made a clear expression of its intention to aggregate sentences for related crimes." Syl. pt. 8, in part, *State v. Gill*, 187 W.Va. 136, 416 S.E.2d 253 (1992). Disregarding the clarity of the legislature's intent as embodied in W. Va.Code § 61–3–24d(c), the majority opinion makes the unconscionable conclusion "that the language at issue fails to constitute a clear and definite statement of such an intent." The majority's conclusion is wrong. What more could the legislature have done to express its clear intent to permit prosecution under W. Va.Code § 61–3–24d, regardless of any other offense charged?[2]

## II.

### *Convictions and Sentences Involving Micro Vane, Inc.*

The defendant in this case was convicted and sentenced for committing the crimes of fraudulent schemes and embezzlement against Micro Vane Inc. (hereinafter referred to as "Micro"). The defendant contended in his brief that: "Appellant Rogers cannot be convicted of both embezzlement and fraudulent schemes with regard to the same transaction. Appellant can either be the lawful possessor of the items or not. It cannot be both ways." The defendant did not raise double jeopardy as a basis for challenging his

---

**1.** The majority opinion attempts to justify its *sua sponte* actions in this case in footnote 15 of the opinion. In that footnote the majority quotes *State v. Salmons*, 203 W.Va. 561, 571 n. 13, 509 S.E.2d 842, 852 n. 13 (1998), wherein we held that "[a]lleged errors of a constitutional magnitude will generally trigger a review by this Court under the plain error doctrine." Obviously, the quote from *Salmons* does not support the majority's actions in this case. *Salmons* specifically states that "alleged errors" may trigger the plain error rule. However, in the instant case the defendant did not "allege" any constitutional error.

**2.** The false pretense offense dates back to 1849, when West Virginia was part of Virginia. The fraudulent scheme offense was created in 1995. Clearly, if nothing else, the dates of the creation

of the offenses should inform the majority that the legislature intended to create separate punishable offenses.

If the legislature had not made its intent clear with respect to the fraudulent scheme statute, I would readily concede that double jeopardy principles prevent a prosecution for both fraudulent scheme and false pretenses under the facts of the crimes against Elkins. However, I make this concession for reasons slightly different than those stated by the majority opinion. The majority states that the elements of false pretenses and fraudulent scheme are exactly the same. I disagree. As I discuss in Part II of this dissent, the fraudulent scheme statute requires the prosecutor to prove the element of a "common scheme or plan," which element is not part of the false pretense offense. *See infra* note 4.

crimes against Micro. The majority opinion *sua sponte* decided to raise this issue.

The majority opinion tersely reaffirmed its earlier conclusion that there was no clear legislative intent to prosecute for fraudulent schemes, in addition to other similar offenses.[3] After concluding that there was no clear legislative intent on the issue, the majority opinion turned to the *Blockburger/Zaccagnini* test, which holds: "Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." Syl. pt. 8, *State v. Zaccagnini,* 172 W.Va. 491, 308 S.E.2d 131 (1983). *Accord Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932).

After applying the *Blockburger/Zaccagnini* test, the majority opinion concluded that while the embezzlement offense contained an element different from the fraudulent schemes offense, the fraudulent schemes offense did not contain an element different from the embezzlement offense. This conclusion is incorrect. The majority opinion reached this wrong conclusion because it actually omitted the additional elements found in W. Va.Code § 61–3–24d that are not contained in the embezzlement statute. Specifically, the majority opinion failed to examine additional elements of the fraudulent schemes offense that are contained in W. Va.Code § 61–3–24d(b).[4] Under W. Va.Code § 61–3–24d(b), the state may "cumulate" monies illegally obtained when there is proof of

a "common scheme or plan." The state does not have to prove a "common scheme or plan" to prosecute for the offense of embezzlement.[5] Had the majority opinion examined W. Va.Code § 61–3–24d in its entirety, it would have concluded that the crimes of fraudulent schemes and embezzlement each contain elements that are different.[6]

### III.

### *Disposition of Case*

The final dissenting issue involves the disposition of the case on remand. The majority opinion states that:

By requiring the entry of new conviction and sentencing orders, we do not mean to imply that a further pre-sentence report is required or that the trial court's discretion in permitting probation or imposing consecutive sentences should be disturbed. We leave those matters to the sound discretion of the trial court.

This disposition is flawed. In the language quoted above, the majority has implied that the trial court has discretion to resentence the defendant in any manner that it chooses. To the contrary, on remand the trial court may not impose a greater penalty than that which was originally imposed. That is, initially the trial court suspended the sentences and placed the defendant on probation. On remand, the trial court does not have discretion to deny the suspension and probation. "[A] defendant should not face increased punishment for having successfully appealed the initial conviction." *People v. Harvest,* 84 Cal.App.4th 641, 646, 101 Cal.Rptr.2d 135,

3. I have previously stated my position that the legislature in fact expressly intended for the fraudulent schemes offense to be prosecuted in addition to other like offenses. *See supra* note 2 and accompanying text.

4. This provision of the statute is the basis for the legislature creating the crime of fraudulent schemes. Without the common scheme or plan provision, the crime of fraudulent schemes would indeed be identical to the crime of false pretenses. *See supra* note 2.

5. One of the elements in the embezzlement offense that is not found in the fraudulent schemes offense is proof that a person came lawfully into possession of the property taken.

6. The majority opinion failed to demonstrate an understanding of what the prosecution had to

prove as to both offenses. The indictment in the case accused the defendant of embezzling "software and hardware pertaining to computer systems, which had came into his possession and had been placed under his care and management by virtue of his position and employment as sales representative of Micro Vane Inc." On the other hand, the indictment accused the defendant of fraudulent schemes in his retention of the "money" he received from the embezzled computer equipment. Part of the "money" received by the defendant for the sale of the embezzled computer equipment belonged to Micro. In the final analysis, the prosecutor had to prove that the defendant embezzled computer equipment and engaged in fraudulent schemes to retain money that legally belonged to Micro.

137 (2000). *See also Reyes v. State*, 978 P.2d 635, 637 (Alaska App.1999) ("One principle of double jeopardy law is that 'once a sentence has been meaningfully imposed, it may not, at a later time, be increased.'") (quoting *Sonnier v. State*, 483 P.2d 1003, 1005 (Alaska 1971)).

For the reasons stated, I respectfully dissent from the majority opinion in this case.